281 So.2d 716 (1973)
STATE of Louisiana
v.
David PLUMMER.
No. 53203.
Supreme Court of Louisiana.
August 20, 1973.
*717 Orleans Indigent Defender Program, Jack Ciolino, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant-appellant, David Plummer, was tried and convicted for manslaughter. LSA-R.S. 14:31. He was sentenced to serve fifteen years in the custody of the Louisiana Department of Corrections. From his conviction and sentence, he perfects this appeal, relying upon two bills of exceptions to obtain a reversal.
Bill of Exceptions No. 1 was reserved to a ruling of the trial judge allowing the Assistant District Attorney, during his voir dire examination of prospective jurors to read to the jury venire the statutory definition of murder as well as manslaughter.
Defendant-appellant argues that the reading of the definition of murder deprived him of his right to a trial by an impartial jury, because of the prejudicial effect of mentioning the crime of murder. The State, on the other hand, argues that the definition of manslaughter containing reference to "murder" is meaningless unless the definition of murder is also read to the jury. LSA-R.S. 14:30 defines the crime of murder. It reads:
"Murder is the killing of a human being,
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated rape, armed robbery, or simple robbery, even though he has no intent to kill.
"Whoever commits the crime of murder shall be punished by death."
LSA-R.S. 14:31, defining manslaughter, reads:
"Manslaughter is:
(1) A homicide which would be murder under subdivision (1) of Article 30 (murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to *718 manslaughter if the jury finds that the offender's blood had actually cooled, or that the average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under subdivision (1) of Article 30.
"Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years." (Emphasis ours)
From this it is clear that to understand the definition of manslaughter, it is necessary to read the definition of murder.
Defendant-appellant nevertheless argues in his brief before this Court that the prejudicial effect of the reference to "murder" and its definition, outweighs whatever purpose was served in reading this definition to the jury.
We find this argument untenable. Before the Assistant District Attorney read the definition of murder to the prospective jurors, he carefully explained that the only purpose in reading the definition of murder was to make it possible to understand the definition of the crime of manslaughter. Both the Assistant District Attorney and the trial judge were careful to explain to the jury that the defendant was being tried for manslaughter, not murder.
We feel that in this case, where the crime charged is manslaughter, the state was required, under the mandate of La.C.Cr.P. Article 766[1] to explain the nature of the charge, to read all relevant statutes, including the statute defining murder. The caution of the Assistant District Attorney and the trial judge that this definition was being read only to provide an understanding of the definition of manslaughter was sufficient to prevent any prejudice to the accused.
This bill of exceptions is therefore without merit.
Bill of Exceptions No. 2 was reserved when the trial judge refused to grant defendant-appellant's motion for a new trial. The motion was founded on allegations that the verdict was contrary to the law and evidence, and that the bills of exceptions reserved during trial show prejudicial error. We have already considered the other perfected bill of exceptions and found it to be without merit. We are therefore left with the allegation that the verdict was contrary to the law and the evidence.
LSA-C.Cr.P. Art. 851(1) permits the trial judge to grant the defendant a new trial if the verdict rendered by the jury is contrary to the law and the evidence. This power is exclusively that of the trial judge when inquiry is directed to the alleged insufficiency of the evidence (as contrasted with no evidence at all). This Court is prohibited from reviewing questions of fact in criminal cases. LSA-Const. Art. VII, Sec. 10; LSA-C.Cr.P. Art. 858. In accordance with these provisions, we have uniformly held that a bill of exceptions reserved to the refusal of the trial judge to grant a motion for a new trial based on Article 851(1), relative to sufficiency of the evidence presents nothing for our review. State v. Crockett, 262 La. 197, 263 So.2d 6 (1972); State v. Williams, *719 262 La. 160, 262 So.2d 507 (1972); State v. Landry, 262 La. 32, 262 So.2d 360 (1972); State v. Singleton, 252 La. 976, 215 So.2d 512 (1968); State v. Stokes, 250 La. 277, 195 So.2d 267 (1967).
This bill is therefore without merit.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] La.C.Cr.P. Art. 766 states: "The opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."