317 So.2d 190 (1975)
STATE of Louisiana
v.
Wesley Joseph SONNIER.
No. 56054.
Supreme Court of Louisiana.
July 25, 1975.
Rehearing Denied September 5, 1975.
*191 Bryan Miller, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., James L. Babin, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant, Wesley Joseph Sonnier, was convicted of armed robbery in violation of La.R.S. 14:64 and was sentenced to serve 10 years at hard labor without benefit of parole, probation, or suspension of sentence. He appeals, relying upon seven assignments *192 of error in urging reversal of his conviction and sentence.
The evidence shows that defendant, while armed with a revolver, entered the Kwik Shop No. 2, a small convenience store in Lake Charles, and threatened to kill the clerk, John Walker, Jr. if he had to. Walker thereupon took money from the cash register, placed it in a paper bag and gave it to defendant. Defendant did not immediately attempt to leave, however, and he was arrested in the store by police officers who arrived a few minutes after the alleged robbery occurred.
Assignments of Errors Nos. 1, 2 and 3.
Defendant assigns as error the denial of his motion for a directed verdict of acquittal. Defendant argued at trial, and he now contends in brief, that certain elements necessary to support a verdict of guilty were missing from the state's case. Specifically, he argues that there is no evidence that he was armed with a dangerous weapon (Assignment of Error No. 1), or that he perpetrated a theft during the incident (Assignment of Error No. 2), or that he acted with the specific intent to permanently deprive anyone of anything of value (Assignment of Error No. 3.[1])
Article 778, C.Cr.P., authorizes the trial judge to direct a verdict of acquittal if, at the conclusion of the state's evidence or of all the evidence, he finds that the evidence is ". . . insufficient to sustain a conviction." In State v. Douglas, 278 So.2d 485 (La.1973), we held that the quoted phrase referred to a situation where the prosecutor has produced no evidence to prove a crime or an essential element thereof. A directed verdict is not proper where the state has presented some evidence tending to prove the commission of the crime and each of its elements.
In the instant case, our review of the state's case in chief discloses that the trial judge did not err in denying defendant a directed verdict of acquittal.
The state presented uncontroverted evidence showing that defendant, during the robbery of the clerk at the Kwik Shop No. 2, was armed with a .22 calibre revolver.
Defendant contends, however, that the State failed to prove that the revolver was in working order, that it was capable of firing a bullet. He contends that the revolver should have been test-fired and the results of the test-firing made known to the jury. He argues that such concrete proof of the revolver's capacity to produce death or great bodily harm was essential to proof of the fact that the revolver was a dangerous weapon.
La.R.S. 14:2(3) states:
"`Dangerous weapon' includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm."
In State v. Levi, 259 La. 591, 250 So.2d 751 (1971), we held that an unloaded and unworkable pistol, pointed at the victim, was a dangerous weapon, making the robbery which occurred an aggravated one.
In light of the Levi decision, it was unnecessary for the state to prove, through a test firing, that the revolver was actually capable of firing. In any event, testimony at trial reflects that the revolver appeared to be in good condition, with no indications that it was broken or worn, and *193 indeed when recovered from defendant contained three live bullets and one spent casing.
Accordingly, we find Assignment of Error No. 1 to be without merit.
Defendant's second argument in support of his contention that a directed verdict should have been entered is that the state failed to provide evidence that a theft or taking occurred during the alleged armed robbery.
The evidence shows that defendant entered the shop at approximately 7:00 p.m. on September 28, 1973. Despite the warm weather, defendant was wearing a jacket, under which he concealed the revolver. He was also wearing a small brown hat or cap, and under the hat, there was visible a lady's stocking, pulled down over defendant's skull and rolled down to just above his ears.
When approached by the store clerk, Walker, defendant withdrew the revolver from his jacket and pointed it at Walker, stating that he would blow Walker's head off and that he was not afraid to use the gun if he had to. Walker testified that he assumed defendant wanted money. Walker went to the cash register and placed what was later determined to be $109.50 into a brown paper bag. He handed the bag to defendant who took it.
Defendant did not, however, immediately leave the store, and he was arrested in the store by police officers who arrived a few minutes after the robbery occurred. Defendant was not in possession of the bag when the police arrived, having at some point placed the bag on the counter, where it was recovered by the police.
An explanation of what occurred during the interval of time after defendant had the paper bag and before the police arrived was not clearly brought out at trial. Walker did testify as to one incident which occurred. It appears that a young child peeped around a corner and saw defendant and Walker. Defendant told Walker to give the child a quarter, and tried to give the bag of money to Walker, presumably so that Walker could extract from it a quarter to give to the child. Walker, however, did not take the bag.
Defendant argues that these facts fail to provide evidence that he took the money without the consent of Walker. As defendant interprets the evidence, all that it shows is that he threatened Walker and Walker gave him a bag of money. He contends that the giving of the money was unsolicited and further, that he showed that he was not interested in a taking of the money because of the fact that he attempted to give it back to Walker, and because he did not immediately attempt to escape but instead lay the bag of money on a counter where it was eventually recovered by the police.
It is apparent, however, that the evidence depicts a set of circumstances from which rational, fair-minded men could find that there was indeed a taking. Defendant did take the bag of money. Furthermore, from the episode involving the small child, the jury could reasonably infer that defendant knew what was in the bag, and that his attempt to give the bag to Walker, so that he could give the child a quarter, was in actuality not an attempt to relinquish the bag but to the contrary was an indication of his control over the contents.
We find no merit in Assignment of Error No. 2.
Defendant's third argument, presented in his thorough brief, is that there was no evidence that defendant had any intent to permanently deprive Walker of the money. It is argued that the State failed to prove any of the usual circumstances by which intent, a subjective state of mind, is proved. It is argued that there is no evidence that defendant ever said "This is a stickup" or similar words, that defendant in any manner checked to assure that all the money from the *194 cash register was placed in the bag, that he ever tried to secret the money on his person, that he took steps to prevent Walker and the customers in the store from calling the police, that he prepared for escape by having a "get away" vehicle, or that he tried to escape immediately after the robbery.
Intent may of course be inferred from the circumstances of the transaction. La. R.S. 15:445.
In our opinion, there was evidence from which the jury could conclude that defendant did intend to rob Walker. Defendant's manner of dress, the stocking, the display of the revolver, his threat to use the gun if he had to, and the fact that he did take the money are all circumstances justifying an inference that defendant intended to rob Walker, to permanently deprive him of the money. Furthermore, in addition to the foregoing evidence, the state called as a witness Sargeant Wagoner, who testified to an oral inculpatory statement given him by defendant. According to Sgt. Wagoner, defendant stated that two gentlemen whom he met in a barroom talked him into robbing the Kwik Shop and that he did in fact rob the store.
Accordingly we conclude that there was evidence of intent to deprive the clerk permanently of the money. Therefore, there is no merit in Assignment of Error No. 3.
Assignment of Error No. 4.
Defendant had entered a plea of "Not Guilty and Not Guilty by Reason of Insanity" to the charge. During presentation of the defense's case, defendant introduced into evidence certified copies of his medical records from East Louisiana State Hospital, Central Louisiana State Hospital, and St. Patricks' Hospital in Lake Charles. The documents show several commitments to Louisiana hospitals and a diagnosis of anti-social personality and alcohol addiction. Also included in the medical records, presumably as part of defendant's history and perhaps pertinent to his treatment, were copies of defendant's "rap sheet."
In connection with the introduction of the medical records into evidence, the defense called Dr. Avery L. Cook, coroner for Calcasieu Parish, as a witness. During direct examination, Dr. Cook referred to various documents contained in the group of records. He was not, however, questioned about the rap sheet and he made no reference to it.
On cross-examination, the prosecutor questioned Dr. Cook on aspects covered in his testimony in chief and then questioned Dr. Cook in regard to the rap sheet. Over defense objection, the state was allowed to thoroughly present to the jury the details of defendant's past criminal record, by having Dr. Cook refer to the rap sheet.
Defendant contends that the trial court erred in allowing the state to expose defendant's rap sheet, considering that normally evidence of prior arrests is inadmissible and evidence of prior convictions is admissible only under specific circumstances not present here.
Defendant would be correct in a situation where the state attempts to introduce inadmissible evidence over defense objection. However, such is not the case here. The documents, including the rap sheet which was explored on cross-examination, had been introduced into evidence not by the state, but by the defendant himself. The documents were properly in evidence, and before the jury for their consideration, because defendant chose to introduce them.
It is inappropriate for us to speculate as to what prompted defense counsel to introduce the rap sheet as part of the medical record. It suffices that such rap sheet was in evidence, placed there by defendant. Under these circumstances, to prevent the state from a thorough cross-examination of a witness, and an exploration of exhibits already admitted into evidence, would be an unwarranted curtailment of a legitimate trial tactic.
*195 This assignment or error has no merit.
Assignment of Error No. 5.
Defendant assigns as error the overruling of his objection to a remark made by the prosecutor in closing argument on rebuttal. The specific remark which prompted the objection was the following:
". . . You had a man facing you with a pistol and told you he was going to blow your head off; what are you going to do? Gentlemen, there's no question that the armed robbery occurred. Luckily we caught him, and luckily there was no shooting when they did catch him."

He objected, protesting that there had been no shooting. The trial judge properly overruled the objection (or protestation).
In brief defendant argues that the remark was irrelevant and calculated to create prejudice against the accused by implying that the revolver was capable of firing. And he complains that the trial court did not attempt to cure the alleged error by admonishing the jury to disregard the remark.
Closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." La.C.Cr.P. Art. 774. The evidence in the instant case showed that defendant was armed with a revolver which gave every appearance of being in working order, and which defendant had used to threaten Walker. The argument by the prosecutor was, however speculative, permissibly referable to the evidence.
Furthermore, even if the remark had been irrelevant and prejudicial, the trial court was not requested by defendant to admonish the jury, such a request being required by Art. 771, C.Cr.P.
Defendant protests that the remark or argument was contrary to Art. 774, C.Cr. P., which confines the state's rebuttal argument to answering the argument of the defendant. This contention was not made at trial, and consequently the trial court did not have the opportunity to rule on such an objection, nor upon a defense request if the objection were meritorious, to admonish the jury to disregard the argument. This protest of defendant's is therefore not properly before us.
This assignment of error has no merit.
Assignment of Error No. 6.
This assignment of error is also directed to certain remarks made by the prosecutor in his rebuttal argument. The transcript reflects the following:
"STATE: . . . [The defendant] sure seemed to know right from wrong when he told that guy he would blow his brains out. Now, he wants to tell you that under the civil law Dr. Cook would put him in an institution so he won't hurt anybody. Three times they tried that. Three times, and there's no way to keep him there. Do you remember when counsel read the letter? It said tell the Coroner don't send this man here again. He's not our type case. He read it to you standing right. . ."
The objection raised at trial and overruled by the trial judge was that the prosecutor was referring to the letter "out of context," or was misleading the jury. He submitted that the letter properly described states that defendant, if in need of further hospitalization, should be sent to Central Louisiana Hospital rather than any other institution.
Defendant now in brief presents the contention that the prosecutor's argument in regard to the civil commitment of defendant was irrelevant and prejudicial and *196 should therefore have prompted an admonition to the jury to disregard the remarks. Art. 771 C.Cr.P. The problem here is that defendant did not present this contention to the trial judge and did not request that the jury be admonished to disregard the allegedly prejudicial remarks.
There was no error in the court's overruling the objection. The jury is fully capable of analyzing the evidence and disregarding partisan argument not fully supported by the evidence.
This assignment of error has no merit.
Assignment of Error No. 7.
Defendant's final assigned error is that he was denied his right to a fair trial by jury in that women were systematically excluded from the jury venire.
Defendant was tried on September 23, 1974 by a jury selected in accordance with Louisiana Constitution (1921), Art. VII, § 41 and C.Cr.P. 402, which at that time provided for a general exemption for women. The United States Supreme Court held that the decision in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), which found unconstitutional the exclusion of women from jury service unless they volunteered, need not be applied retroactively. Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975). This court held in State v. Rester, 309 So. 2d 321 (La.1975), that we would not give the Taylor case retroactive effect.
There is no merit in this assignment.
Accordingly, defendant's conviction and sentence are affirmed.
TATE, J., dissents and assigns reasons.
TATE, Justice (dissenting).
I respectfully dissent.
The accused Sonnier, if mentally competent, undoubtedly committed a felony by threatening the store clerk with the weapon. The close issues for the jury to determine were: (a) whether this mentally disturbed individual was mentally incompetent and thus a subject for (re)hospitalization rather than for the penitentiary and (b) whether, even if mentally competent, this individual intended to commit the crime of armed robbery instead of, as a mean drunk, simply threatening the store clerk (and thus subject to punishment under the less rigorous penalties of a felony other than armed robbery).
In connection with the issue of mental competency, the accused introduced into evidence voluminous medical records. Tucked within them was an arrest record of the accused, along with other sociological and background information. On cross-examination of the medical witness, the State asked the doctor to read the page or so of the arrest record contained within this medical report.
The objection to this grossly prejudicial and irrelevant cross-examination should have been sustained. I can think of no conceivable reason that it had any relevancy whatsoever to the issues of the direct examination of the medical witness, to his qualifications, or to any issue of this prosecution. The sole purpose of the cross-examination was to bring before the jury this grossly prejudicial and irrelevant information of a string of petty arrests on this mentally disturbed individual's past, in violation of the statutory and jurisprudential rules forbidding reference to prior arrests even for the purposes of testing credibility.
The State does not deny that it would have been reversible error if it had itself sought to have introduced this arrest record. It does not contend that, if the defense counsel had limited his introduction of the medical records to the medical treatment records (and had excluded the arrest record), the State could have brought evidence of these prior arrests before the jury. Its position is simply that, since the defense counsel failed to so limit his introduction *197 of the medical records, the State can bring this improper evidence before the jury, regardless of its relevancy.
This cannot be the law. Further, conceding the high character of the present prosecutor and the circumstance that in the heat of adversary trial the instinct of the advocate to win may cause one to overlook the following principle, nevertheless: "The duty of the prosecutor is to seek justice, not merely to convict." American Bar Association Standards on the Prosecution Function, Standard 1.1 (1971).
Due to the grossly prejudicial evidence of prior arrests brought to the jury's attention by the State despite the statutory and jurisprudential prohibition against doing so, the accused simply did not receive a fair trial on the issue of his mental incapacity at the time of the crime and of his lack of intent to commit a robbery (as compared with an assault).
I therefore respectfully dissent.
NOTES
[1] La.R.S. 14:64 defines the crime of armed robbery as "the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

Theft, in turn, is defined by La.R.S. 14:67 as "the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential."