340 So.2d 180 (1976)
STATE of Louisiana
v.
Cordell LEE.
No. 57716.
Supreme Court of Louisiana.
October 14, 1976.
*182 Carol B. Hart, Milton E. Brener, Garon, Brener & McNeely, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
On June 12, 1974 at approximately 12:30 a.m. the victim, Marguerite Santenac, got off the bus on Paris Avenue and proceeded toward her home in the Parkchester Apartments. At this time the defendant, Cordell Lee, approached her, put a knife to her throat, brought her to an abandoned unit in the Parkchester housing complex and forced her, at knife-point, to submit to the crime of aggravated rape. The victim notified the police who brought her to the coroner's office for an examination that same night. On October 28, 1974 the defendant was arrested. From photographs brought to her by the police, the victim positively identified the defendant as the man who raped her. She subsequently made a second positive identification of the defendant at a police lineup.
On March 27, 1975 the Orleans Parish Grand Jury indicted Cordell Lee for the aggravated rape of Marguerite Santenac, a violation of R.S. 14:42. A twelve man jury convicted the defendant of aggravated rape by a unanimous verdict. Later, the trial judge imposed the mandatory death sentence.
Assignment of Error No. 1
Prior to trial, the defendant attacked the validity of the indictment by way of a motion to quash. The trial court denied the motion. In that motion, the defendant attacked the make-up and manner of selection of the grand and petit juries and the venires of both. In his brief though, the defendant offers no grounds for these objections. He merely argues that the motion to quash was the proper procedural vehicle by which to attack the makeup of the grand and petit juries and the venires of both. The defendant is correct in that assertion. C.Cr.P. 532, 533; State v. Wilson, 315 So.2d 646 (La.1975). However, since the defendant neither briefed nor argued *183 the substance of these attacks, they are deemed abandoned. State v. Matthews, 292 So.2d 226 (La.1974); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).[1]
Defendant's principal assignment of error as initially presented in the motion to quash is that R.S. 14:42 (aggravated rape) is unconstitutional in that the imposition and the carrying out of the death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.[2] On July 6, 1976 the Supreme Court of the United States handed down the decision in Selman v. Louisiana, ___ U.S. ___, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976). In that case the defendant had been convicted of aggravated rape and sentenced to death. This court affirmed both the conviction and the sentence. State v. Selman, 300 So.2d 467 (La.1974). The Supreme Court's opinion in the Selman case is as follows:
"The petitioners in these cases were sentenced to death. The imposition and carrying out of the death penalty in these cases constitutes cruel and unusual punishment in violation of the 8th and 14th Amendments. Roberts v. Louisiana, 428 U. S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). The motions for leave to proceed in forma pauperis and the petitions for writs of certiorari are granted. The judgments are therefore vacated insofar as they leave undisturbed the death penalty imposed, and the cases are remanded to the Supreme Court of Louisiana for further proceedings." (Emphasis added).
Therefore, although Selman and Roberts mandate a reversal of the death sentence, since the record reveals no other reversible error, the conviction is affirmed. State v. Thomas, 310 So.2d 517 (La.1975); State v. Franklin, 263 La. 344, 268 So.2d 249 (1972); State v. Singleton, 263 La. 267, 268 So.2d 220 (1972).
In order to fix the appropriate sentence in this case it is necessary to determine what other responsive verdicts the jury might have returned at the time the crime was committed. In 1973 the legislature amended Article 814 of the Code of Criminal Procedure to provide that the only responsive verdicts to aggravated rape are guilty, guilty of attempted aggravated rape, guilty of simple rape and not guilty. La. Act No. 126 (1973). Similarly, C.Cr.P. 817 was amended to delete the provision authorizing the qualifying verdict "guilty without capital punishment." La. Act No. 125 § 1 (1973).
At the time this crime was committed, attempted aggravated rape was punishable *184 by imprisonment at hard labor for not more than twenty years, R.S. 14:27(D)(1), and simple rape was punishable by imprisonment at hard labor for not less than one nor more than twenty years, R.S. 14:43. Therefore, we cannot accept the State's recommendation that the defendant be given a sentence of life imprisonment, since no lesser included offense of the crime of aggravated rape carried such a penalty at the time of the commission of this crime.[3]
Thus, we will follow this court's decision in State v. Craig, 340 So.2d 191 (La.1976), and remand the case for the resentencing of the defendant to the most serious penalty for a lesser included offense. The legislature obviously intended to impose the most serious penalty available under the law. In this case, although there is a range of from one to twenty years, the most serious penalty is twenty years at hard labor. The conviction will be affirmed and the case remanded for resentencing.
Assignment of Error No. 4
Defendant contends the trial court erred by denying his motion for a directed verdict made at the close of the State's case in chief. Defendant bases this contention on the judge's explanation (in his per curiam) of his refusal to grant the motion:
"Pursuant to C.Cr.P. Art. 778, it is to be the function of the trial judge to determine, in his sound discretion, if there is sufficient evidence to warrant the direction of a not guilty verdict for a defendant. If there is insufficient evidence, the Motion for the Directed Verdict of Acquittal will be denied and the defendant may offer his evidence in his defense at that time. In the absence of a showing of abuse of his discretion, the trial judge's ruling on the Motion for the Directed Verdict will not be disturbed."
Defendant contends the trial court called upon defendant to prove his innocence rather than affording him the presumption of innocence. We disagree.
According to C.Cr.P. 778 as it read at the time of trial, a directed verdict was available in a jury trial only where there was no evidence of an essential element of the crime. State v. Douglas, 278 So.2d 485 (La.1973). The trial court's per curiam does not expressly mention this standard, but a reading of it shows he understood and applied this test. Indeed, this is what he meant when he said, "if there is sufficient evidence to warrant the direction of a not guilty verdict for a defendant."
Even if the trial court misconstrued the test to be applied, defendant has no complaint. The victim testified she was forced to submit to an act of intercourse performed against her will by a man threatening her with a knife. She identified this man as defendant. Thus a directed verdict could not be granted.
This assignment lacks merit.
Assignment of Error No. 5
Defendant contends that the trial court erred by refusing to allow his witness, Paulette Davis, to testify on his behalf. The record reveals, however, that the witness took the stand, but was asked no questions which the trial court would allow.
Paulette Davis had been raped in the area of the Parkchester Apartments on August 10, 1974. Cordell Lee had been tried and acquitted of that rape before he was tried for the June 12, 1974 rape of Ms. Santenac. The defense effort was to establish that there was a rapist in the area who resembled Cordell Lee.
The witness Davis was examined during a motion for a new trial, and she persisted in her identification of the defendant as her rapist, in spite of the fact that he was not convicted. If she had been allowed to testify fully at the trial, it is probable that her testimony would have assisted the prosecution instead of the defense.
Nevertheless, we cannot say from the record before us that the trial court erred. *185 Two months separated the two incidents. The location of the second rape is identified (and then only by defense counsel in argument) as being "in that area." There is not sufficient factual basis in the record to find that the questions asked by the defense were relevant to the issues in the case.
There is no merit in this assignment.
Assignment of Error No. 6
Defendant contends that the trial court erred in sustaining an objection made by the prosecutor to a statement of defense counsel in the closing argument. The accused had taken the stand and the prosecutor did not cross-examine him. The following exchange took place during defense counsel's closing argument:
"DEFENSE COUNSEL: . . . The prosecutor elected not to ask any questions. I can think of a hundred which the prosecutor could have asked; do you own a yellow bike? and I guess the prosecutor will say he does not own a yellow bike. What were you doing in the neighborhood? Were you visiting people there? . . .
"DISTRICT ATTORNEY: I did not ask any questions, but not for reasons given by the defense attorney.
"COURT: Sustained."
The trial judge is accorded wide discretion in confining the arguments to the scope of the evidence. State v. Dorsey, 262 La. 785, 264 So.2d 644 (1972), and Article 774 of the Louisiana Code of Criminal Procedure provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
The prosecution is under no duty to cross-examine a defendant who takes the stand and presumably refrained from doing so here for tactical reasons. Defense counsel had ample opportunity to question the accused on these matters during his direct examination. Furthermore, whether any evidence might have been adduced if the prosecutor had cross-examined the defendant is purely a matter of speculation and does not fit within the language "lack of evidence" as used in C.Cr.P. 774. This situation is distinguishable from that in State v. George, 312 So.2d 860, 863-864 (La.1975). There, defense counsel sought to comment on the prosecution's failure to introduce a confession or inculpatory statement of the defendant; that argument should have been permitted, noted the dissent, as it does constitute argument on the "lack of evidence." C.Cr.P. 774.
Lastly, even if it may have been error for the trial court to cut short defense counsel's closing argument, no prejudice to the defendant has been demonstrated. C.Cr.P. 921. This is particularly true since defense counsel amply demonstrated to the jury that the prosecutor had failed to cross-examine the defendant.
This assignment lacks merit.
Assignment of Error No. 7
Defendant contends that the trial court erred in overruling defense counsel's objection to statements by the prosecutor during his rebuttal argument and in failing to admonish the prosecutor before the jury. The prosecutor's rebuttal argument included the following language:
". . . if we think about this in terms of our community, where we live today in the City of New Orleans, we have to consider Marguerite Santenac's feelings in this case, whether you think she is ignorant, ugly, poor or what you think about her, I think you do have to think she is truthful. I would submit to you that if you would go upstairs and return a verdict of not guilty and turn Cordell Lee back on the streets of New Orleans, then you should think about your elderly mother, your grandmother . . ."
Defendant contends that this line of argument was inflammatory and appealed *186 to prejudice in violation of C.Cr.P. 774 and therefore constituted reversible error. This court does not condone the type of argument used by the prosecutor in this case and it is questionable whether these statements fall within the permissible scope of rebuttal argument as defined in C.Cr.P. 774. But see State v. Brown, 288 So.2d 339 (La.1974), holding such argument permissible. But even if such language was impermissible, its use does not necessarily constitute reversible error.
"Under the jurisprudence of this Court, before a verdict approved by the judge is set aside on the ground of improper argument, this Court must be thoroughly convinced that the jury was influenced by the remarks, and that they contributed to the verdict." State v. Jackson, 227 La. 642, 80 So.2d 105, 109 (1955).
This same language was approved in State v. Chaffin, 324, So.2d 369, 373 (La.1975) and State v. Dennis, 250 La. 125, 139, 194 So.2d 720, 725 (1967). Accordingly, we cannot agree with the defendant that he was so prejudiced by these statements that his conviction must be overruled. See State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Dennis, supra.
While Article 774 of the Code of Criminal Procedure defines the permissible scope of argument, it provides no sanction for its violation. Therefore, the proper remedy is to be found in Articles 770[4] and 771 of the Code of Criminal Procedure. C.Cr.P. 774 Official Revision Comment (C); State v. Clark, 332 So.2d 236, 237 (La.1976). In order to invoke the remedy of mistrial or admonition, though, the State or the defendant must have made a request for such relief. Article 771 provides:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
This court has consistently held that the trial court commits no error in failing to admonish the prosecutor if there has been no request for an admonition.[5]State v. Larue, 324 So.2d 384, 387 (La.1975); State v. Knight, 323 So.2d 765, 768-769 (La.1975); State v. Sonnier, 317 So.2d 190, 195 (La.1975); State v. Johnson, 261 La. 620, 641, 260 So.2d 645, 652 (1972). In the instant case, the defendant did not request an admonition *187 nor did he move for a mistrial. Therefore, the defendant's contention that it was error for the judge to fail to admonish the prosecutor before the jury is without merit.
Assignment of Error No. 9
In his last assignment of error, defendant contends that the trial court erred in refusing to grant his motion for a new trial and in arrest of judgment, and his supplemental motion for a new trial and arrest of judgment. A hearing on these motions was held on August 5, 1975 and the trial judge denied these motions. A second supplemental motion for a new trial and arrest of judgment was filed by defendant and a hearing on the motion was held on August 19, 1975. This motion was also denied. These motions relied on various grounds contained in the assignments of error and have already been discussed above. The following additional grounds in support of these motions were offered:
(1) The verdict is contrary to the law and the evidence.
A memorandum setting forth the specific errors was submitted. While such a motion requires the trial judge to pass upon the sufficiency of the evidence, State v. Washington, 292 So.2d 234, 236 (La.1974), it is clear that the trial judge did so in this case and determined that the verdict was correct.
The power to grant the defendant a new trial if the jury verdict is contrary to the law and the evidence is exclusively that of the trial judge when the issue is the sufficiency of the evidence (as opposed to no evidence at all). State v. Vincent, 284 So.2d 563 (La.1973); State v. Plummer, 281 So.2d 716 (La.1973). Since the alleged error here regards the sufficiency of the evidence, this court is precluded from reviewing the record on questions of fact. La.Const. of 1921, Art. VII, § 10; La.Const. of 1974, Art. 5, § 8(C). Therefore, the assignment of error relative to the refusal of the trial judge to grant a motion for a new trial based on C.Cr.P. 851(1) presents nothing for review. State v. Plummer, supra.
(2) Newly discovered evidence.
At the hearing on the motions for a new trial, the defense presented three witnesses who offered "new evidence." Connie Gardley, co-chairman of the Parkchester Developments Committee, testified that he interviewed the victim on the morning after the rape and that she identified her attacker as "Kung Fu," a friend of Gardley. However, Gardley did nothing about Kung Fu although he was supposedly engaged in the investigation of a number of alleged rapes at the Parkchester Apartments. John Joseph, a resident of the area, stated in his affidavit (accepted in lieu of his testimony) that the victim told him only hours after the alleged rape that she had seen the rapist before, and again between the time he raped her and the time of their conversation. This testimony was offered to contradict the victim's testimony to the effect that she did not know the perpetrator and had never seen him before or after. Simpson Wright, the stepbrother of Connie Gardley, had seen a man, distinctively dressed like the alleged rapist, engaging in sexual activity with a dog in the Parkchester area, some months after the rape. Both Wright and Mrs. Santenac witnessed the police lineup (separately). Wright claims[6] that he did not identify the defendant as the one who had engaged in the sexual acts with the dog. Wright and the victim drove home from the lineup together. Wright testified that the victim denied having identified any one at the lineup, but Mrs. Santenac, in her testimony at the trial, stated that she picked the defendant out immediately at the lineup.
The trial judge denied the motion for a new trial on the ground that there was a lack of reasonable diligence in producing the newly discovered evidence either before *188 or during the trial and for the further reason that he found the newly discovered evidence suspicious or incredible. C.Cr.P. 851 provides in part:
"The court, on motion of the defendant, shall grant a new trial whenever:
"(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty."
At trial the defendant was represented by appointed counsel, who was an attorney of the Orleans Indigent Defender Program. Defense counsel now contends that that organization had neither the funds nor the manpower to conduct a thorough investigation and that it was not until counsel was retained that these new witnesses could be discovered. While the fact of appointed counsel, in itself, would not satisfy the "reasonable diligence" test of Article 851, this court has recognized that notwithstanding a possible failure to exercise reasonable diligence a "defendant, as an indigent, should not be made to suffer because of a possible shortcoming of counsel provided by the court." State v. Gilmore, 332 So.2d 789, 793 (La.1976). Therefore we cannot agree with the trial judge that a new trial should have been denied because of a lack of reasonable diligence.
However, a new trial will not be granted unless this new evidence is of such a nature that it would probably have changed the verdict. C.Cr.P. 851(3); State v. Barfield, 292 So.2d 580 (La.1974); State v. Jackson, 253 La. 205, 217 So.2d 372 (1968). Additionally, the trial court has discretion to grant or deny a new trial when it is sought on the ground of newly discovered evidence which is suspicious or incredible. State v. Griffin, 288 So.2d 636 (La.1974); State v. Jackson, supra. In such situations the decision to grant or deny a new trial will not be disturbed on appeal. State v. Cancler, 252 La. 380, 211 So.2d 298 (1968). We find no abuse of discretion here. The trial judge found the evidence to be incredible and he did not err in denying the motion for a new trial.
Finally, the defendant relies on C.Cr.P. 851(5) entitling the defendant to a new trial whenever "(t)he court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right." A fair reading of the testimony adduced at the trial and at the two hearings on the motions for a new trial shows no injustice to the defendant. Therefore, the failure of the trial judge to grant the motions for a new trial did not amount to an error of law and the decision will not be set aside. C.Cr.P. 858.
Accordingly, the conviction is affirmed and the case is remanded for resentencing.
SANDERS, C. J., concurs in the conviction, but dissents from the sentence and assigns written reasons.
SUMMERS, J., concurs in the conviction, but dissents from the holding on penalty for the reasons assigned.
MARCUS, J., concurs in affirmance of defendant's conviction, but dissents from penalty directed by majority for reasons assigned in his concurring and dissenting opinion in State v. Craig, 340 So.2d 191 (La.1976).
SANDERS, Chief Justice (concurring in affirmance of conviction but dissenting from the sentence).
I agree with Mr. Justice Summers that in adjusting to the decision of the United States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), we need only remand the case for a sentence hearing by a jury to determine whether capital punishment should be imposed. In 1971, I advocated such a procedure following the United States Supreme Court decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See my dissent in State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971).
*189 Absent majority agreement on the jury hearing procedure, however, I would order the trial judge to impose a sentence of life imprisonment. Reduction of the sentence for aggravated rape from death to twenty years is a far too drastic reduction. In my opinion, such a change does violence to legislative policy.
For the reasons assigned, I respectfully concur in the affirmance of conviction but dissent from the sentence.
SUMMERS, Justice (dissenting).
This case involves the imposition of the death penalty for the crime of aggravated rape. La.R.S. 14:42. A constitutional challenge to this statute's mandatory death penalty provision was rejected in State v. Selman, 300 So.2d 467 (La.1974). Our decision was based upon the fact that Articles 814 and 817 of the Code of Criminal Procedure had been revised to conform with the rationale set forth in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) by fixing standards to guide the jury in imposing the death penalty or not. Thus the Furman decision finding that our previous statute gave the jury unfettered discretion in imposing the death penalty or not was corrected.
As the majority opinion points out in the instant case, on July 6, 1976 the Supreme Court of the United States declared Louisiana's mandatory death penalty in the aggravated rape statute unconstitutional in Selman v. Louisiana, ___ U.S. ___, 96 S.Ct. 3214, 49 L.Ed.2d 1212. The Selman decision is based upon the reasons assigned in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) and Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944, rendered July 2, 1976.
It was Louisiana's contention in Roberts that Louisiana's Legislature had adopted satisfactory procedures to comply with Furman's requirement that standardless jury discretion be replaced by procedures that safeguard against the arbitrary and capricious imposition of death sentences. But the Court held that objective had not been realized by the responsive verdict procedure relied upon. Not only did Louisiana's statutory plan lack standards to guide the jury in selecting among first degree murderers the Roberts Court held, but the responsive verdict plan invited the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they felt that the death penalty was inappropriate.
"The constitutional vice of mandatory death sentence statuteslack of focus on the circumstances of the particular offense and the character and propensities of the offender," the Court said, "is not resolved by Louisiana's limitation of first degree murder to various categories of killings." They "afford no meaningful opportunity for consideration of mitigating factors presented by the circumstances of the particular crime or by the attributes of the individual offender." It was also the Court's opinion in Roberts that Louisiana's statute prescribed no meaningful appellate review of the jury's decision on the penalty the statute made mandatory.
To comply with the Cruel and Unusual Clause of the Eighth Amendment to the Federal Constitution, the Court said in Woodson, there must be a determination of contemporary standards regarding the infliction of capital punishment. These contemporary standards as approved in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), involve indicia of societal values identified in prior opinions and include history, traditional usage, legislative enactments and jury determinations.
In each case affected by the Furman decision, the United States Supreme Court vacated the judgment insofar as it left undisturbed the death penalty imposed and remanded the case to this Court for further proceedings. 408 U.S. 932, 933, 92 S.Ct. 2852, 2861, 2870, 2846, 33 L.Ed.2d 745. This Court construed those decrees to require the imposition in each case of a sentence other than death. State v. Singleton, 263 La. 267, 268 So.2d 220 (1972). Accordingly, the death sentence imposed upon defendant was annulled and set aside, and the case *190 was remanded to the trial court for sentencing the defendant to life imprisonment.
In the instant case we construe the mandate of the United States Supreme Court to invalidate the mandatory death penalty only. The conviction stands. Unlike the Furman decision, which held the imposition of the death penalty to be cruel and unusual punishment because of the jury's unfettered choice to impose it or not, here the infirmity in Louisiana's statute is that no review of the penalty upon the jury verdict is provided for or permitted.
Following the procedure we adopted in State v. Singleton, supra, therefore, we should, in compliance with the rationale of Roberts and Woodson, remand the case to the trial court for a sentencing hearing before a jury empaneled for that purpose.
This sentencing hearing should focus on the circumstances of the offense and the character and propensities of the offender. The hearing should be conducted according to the rules of evidence. Evidence relative to aggravating or mitigating circumstances should be considered relevant irrespective of whether the defendant places his character at issue. Insofar as applicable, the procedure should be the same as that prescribed for trial in the Code of Criminal Procedure. The jury may consider any evidence offered at the trial on the issue of guilt. The defendant may testify in his own behalf. In the event of retrial the defendant's testimony shall not be admissible except for purposes of impeachment.
A sentence of death shall not be imposed unless the jury finds beyond a reasonable doubt that at least one statutory aggravating circumstance exists and, after consideration of any mitigating circumstances, recommends that the sentence of death be imposed. The jury should be furnished with a copy of the statutory aggravating and mitigating circumstances.
The following should be considered aggravating circumstances:
(a) The offender was engaged in the perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, or armed robbery;
(b) The victim was a fireman or peace officer engaged in his lawful duties;
(c) The offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping;
(d) The offender knowingly created a risk of death or great bodily harm to more than one person;
(e) The offender offered or has been offered or has given or received anything of value for the commission of the offense;
(f) The offender at the time of the commission of the offense was imprisoned after sentence for the commission of an unrelated forcible felony;
(g) The offense was committed in an especially heinous, atrocious or cruel manner.
The following shall be mitigating circumstances:
(a) The offender has no significant prior history of criminal activity;
(b) The offense was committed while the offender was under the influence of extreme mental or emotional disturbance;
(c) The offense was committed while the offender was under the influence or under the domination of another person;
(d) The offense was committed under circumstances which the offender reasonably believed to provide a moral justification or extenuation for his conduct;
(e) At the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication;
(f) The youth of the offender at the time of the offense;
(g) The offender was a principal whose participation was relatively minor;
(h) Any other relevant mitigating circumstance.
A sentence of death, under this disposition, would be imposed only upon the unanimous recommendation of the jury. If the jury finds the sentence of death inappropriate, *191 it should recommend a sentence of life imprisonment without benefit of probation, parole or suspension of sentence.
The defendant would then be sentenced in accordance with the unanimous recommendations of the jury; otherwise, in the case of a verdict which is not unanimous, a sentence of life imprisonment without the benefit of probation, parole or suspension of sentence would be imposed. The sentence would then be reviewed by this Court to determine whether it is excessive under rules it would prescribe. Compare Act 694 of 1976, La.Code Crim.Pro. art. 905-905.9.
In my view this recommended disposition of this and like cases affected by the Roberts and Selman decisions more nearly comports with reason and logic. The suggested disposition is procedural in nature, while the Court in the case at bar makes a substantive change when it selects another and lesser included offense in order to find what it considers to be an appropriate penalty. The dispositions I propose, on the contrary, retain the verdict of guilty for the crime charged which the jury has found. Only the penalty is to be reconsidered and only a procedure is outlined for accomplishing that result. No substantive change is suggested such as that suggested by the majority. Moreover, the procedure suggested is in accordance with standards approved by the United States Supreme Court in Roberts and Woodson.
This suggested procedure is, furthermore, in keeping with the public policy as declared by the Legislature in repeatedly prescribing the death penalty for this offense. The suggested procedure does not discard the death penalty but, to the contrary, leaves it open to be imposed in accordance with standards approved by the Roberts and Woodson holdings.
On the other hand, the majority opinion offends these principles. A new crime is engrafted on the jury verdict and a new penalty is imposed. And this is done by judicial decree contrary to the jury verdict and without complying with any standards approved for mitigation by the United States Supreme Court. In this case the majority decree and instructions to the trial court fly in the face of the expressed objection to the responsive verdict procedure in Roberts. And finally the majority holding does not carry out the public policy of the State as expressed by the Legislature.
I respectfully dissent.
NOTES
[1] Notwithstanding this abandonment, the trial judge was correct in denying the motion to quash on these grounds as these assignments of error lack merit. Paragraph III of the motion to quash contends that C.Cr.P. 798(2) is unconstitutional, in that excusing jurors pursuant to that article eliminates an identifiable cross-section of the community. Article 798(2) provides:

"The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt."
The dismissals for cause that occurred in this case were proper and were not in violation of the guidelines set down in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See State v. Washington, 321 So.2d 763 (La.1975). Paragraphs IV and V of the motion to quash alleged that the grand jury that indicated Cordell Lee did not include citizens between the ages of eighteen and twenty-one years and therefore the defendant was deprived of his constitutional right that the grand jury be a body truly representative of the community. The defendant makes no allegation that the eighteen-twenty-one year olds were systematically excluded from the venire, and absent such a showing the venire will be upheld. State v. Morgan, 315 So.2d 632, 636 (La.1975); State v. Williams, 310 So.2d 528, 532 (La.1975); State v. McKinney, 302 So.2d 917 (La.1974).
[2] There was a question as to whether the trial judge considered the motion to quash to be the correct procedural vehicle to challenge the constitutionality of that statute. Clearly, it was. C.Cr.P. 532 provides:

"A motion to quash may be based on one or more of the following grounds:
"(1) The indictment fails to charge an offense which is punishable under a valid statute."
[3] To do so would constitute judicial legislation of an ex post facto law in violation of the United States Constitution, Art. I, § 10, CI. 1, the Louisiana Constitution of 1921, Art. IV, § 15 and the Louisiana Constitution of 1974, Art. 1, § 23.
[4] The prerequisites for a mandatory mistrial under Article 770 have not been met in this case:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
"(3) The failure of the defendant to testify in his own defense; or
"(4) The refusal of the judge to direct a verdict. "An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
[5] A trial judge may admonish the jury without being requested to do so if he deems it necessary to protect the rights of the defendant. State v. Clark, 288 So.2d 612, 614 (La.1974). But, it is not reversible error to fail to do so when no request has been made.
[6] There is some question as to whether Wright did, in fact, identify Cordell Lee as that person at the lineup.