339 So.2d 818 (1976)
STATE of Louisiana
v.
Rickey ALEXANDER.
No. 58164.
Supreme Court of Louisiana.
November 8, 1976.
*820 Harold L. Savoie, Duson Bar, Inc., Lafayette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Rickey Alexander was charged by grand jury indictment with aggravated rape in violation of La.R.S. 14:42. On November 26, 1975, a jury found defendant guilty as charged. Subsequently he was sentenced to death. Relying on seven assignments of error, defendant now appeals his conviction and sentence.
The incident from which this charge arose occurred on March 6, 1975, between 8:30 and 9:00 a.m. On the morning in question after having seen her children off to school and her husband off to work, the alleged victim went back to bed and was awakened by the doorbell. She got up, put on a robe and answered the door. A man standing at the door asked if her husband was home and when she responded in the negative, he asked her if she knew a George Patin. The woman stated that there was no one in the neighborhood by that name and proceeded to close the door. The man, however, put his hand on the door and pushed it open. The woman then began to scream and tried to get out the door, but he got her by the neck with both hands. Although she apparently kept fighting and trying to get away, he continued to grasp her by the neck so that she could hardly breathe and struck her in the face several times. While she kept fighting and trying to get away, he took her to the floor of the kitchen and had sexual intercourse with her. He then left and she saw him drive away in a 1970 gold car and picked up three of the numbers of the license plate. She called her husband, the police subsequently arrived, and she was taken to the coroner's office for examination at about 10:30 a.m. The coroner testified that she was bruised, that her jaw was swollen and that the results of the genital examination were positive for presence of spermatozoa. An investigation by the police led to defendant's arrest the following day. A tape recording of a confession made by defendant was played to the jury, after having been found admissible. Defendant took the stand, however, and testified that he only made the statement because he was promised to be out by Monday if he did so. He stated that he had been having an affair with the victim, that on the morning in question he had gone to her house to call it off, that she had cursed at him and slapped him in the face, and that because of this he did hit her and put his hands around her neck.
ASSIGNMENTS OF ERROR NOS. 1, 4, and 6.
By assignment of error number one, defendant argues that the trial court should *821 have granted a new trial or dismissed the charge against defendant on the grounds that the verdict was contrary to the law and the evidence. By assignment of error number four, defendant contends that assuming there was a rape there was a total lack of evidence of the aggravated nature of the rape. By assignment of error number six, defendant argues that the medical evidence was inadequate to show a "connection" between the alleged victim and defendant.
These assignments of error are consolidated for argument as they all relate to a purported insufficiency of evidence introduced at trial. At the outset it should be noted that assignment of error number one is not argued in brief but is being discussed because defendant was convicted of a capital offense. That assignment is apparently based on the denial of a motion for a new trial, the grounds urged being that the verdict was contrary to the law and the evidence. The motion for a new trial, however, does not raise this issue but rather sets forth grounds which are the subject of assignments of error numbers five and seven, discussed infra. With these factors in mind, the specific assignments will be discussed more fully.
In criminal matters, the scope of this Court's appellate jurisdiction extends only to questions of law. La.Const. art. 5, Sec. 5(C) (1974). A contention that a verdict was based on insufficient evidence is essentially a question of fact. Only where defendant has moved for a directed verdict during trial (permissible in jury trials prior to the recent amendment of article 778 C.Cr.P., Acts 1975, No. 527, § 1) or for a new trial based on the argument that there is no evidence at all of some essential element of the crime charged is a question of law presented which this Court can review. See State v. Jack, 332 So.2d 464 (La.1976); State v. Jones, 303 So.2d 486 (La.1974); State v. Douglas, 278 So.2d 485 (La.1973). No such motions were made by defense counsel in the instant case. However, because of the capital nature of the offense, we will discuss the issue of whether there was at least some evidence of the essential elements of the crime.
Defendant was charged with the offense of aggravated rape. Rape is defined in La.R.S. 14:41 as follows:
"Rape is the act of sexual intercourse with a female person not the wife of, or judicially separated from bed and board from, the offender, committed without her lawful consent. Emission is not necessary; and any sexual penetration, however slight, is sufficient to complete the crime."
Aggravated rape is defined at La.R.S. 14:42 as follows:
"Aggravated rape is a rape committed where the sexual intercourse is deemed to be without the lawful consent of the female because it is committed under any one or more of the following circumstances:
(1) Where the female resists the act to the utmost, but her resistance is overcome by force.
(2) Where she is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) Where she is under the age of twelve years. Lack of knowledge of the female's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by death."
In the instant case there was at least some evidence that defendant had sexual intercourse with the victim, who was not his wife, without her consent. With respect to the aggravated nature of the rape, there was at least some evidence that the victim resisted the act to the utmost but that her resistance was overcome by force. The victim testified that throughout the episode she continued to fight defendant, pushing on him and trying to get away. In apparent reaction to this resistance, defendant had to grasp her by the neck leaving bruise marks. He also struck her in the face at least once, more likely several times, leaving her jaw swollen.
*822 In specific response to defendant's arguments on appeal, the fact that no weapon was introduced and that no clothing was exhibited to the jury is not controlling. The absence of a weapon does not mean that a victim's utmost resistance was not overcome by force, and there was apparently no probative value to the clothes the victim was wearing under the facts of this case. She did not in fact testify that any clothing was torn or soiled during the incident. With respect to defendant's argument that the medical evidence did not indicate any physical contact between the alleged victim and defendant there was testimony by the coroner that approximately one hour and a half after the alleged offense, a genital examination of the victim showed the presence of spermatozoa. In addition, the coroner testified that there is no test for determining that particular semen comes from a particular male, but only whether the spermatozoa is present or not. While the physician did state that there are some sophisticated tests for determining blood type from semen, no facilities for carrying out the test were available in Lafayette. The failure to carry out this test even if it was available would only go to sufficiency of the evidence. Absence thereof would not establish a total lack of evidence.
It is submitted that these assignments of error lack merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 3.
By assignment of error number two, defendant argues that the recording of "some" statements made by defendant should not have been admitted into evidence because they were incomplete. By assignment of error number three, defendant argues that the confession itself was improperly admitted in that prior to giving the statement defendant did not affirmatively and positively indicate that he understood his rights.
Defendant was arrested on March 7, 1975, the day following the alleged rape, in Breaux Bridge, Louisiana by an officer with the Breaux Bridge City Police. Almost immediately thereafter he was taken into custody by Detective Guy Barnett and Roland Boutte of the Lafayette Police Department and placed in their police unit to be transported back to Lafayette. Once in the police car, the officers gave defendant his rights orally. The rights were again given defendant when they arrived at their office. On this latter occasion he signed a waiver of rights form and gave a statement, in question and answer form, confessing to the rape. The giving of the rights in the police unit and some questioning of defendant during the ride back to Lafayette were tape recorded, as were the regiving of the rights and the confession taken at the office.
Defendant contends that he did not adequately acknowledge his understanding of his rights prior to giving the statement. The tape recording taken during the ride from Breaux Bridge indicates that defendant was adequately informed of his rights. When told of his right to counsel, he indicated he did not understand. Following a re-explanation, he stated, "Oh, I understand." The tape recorded at the office contains another reading of defendant's Miranda rights and a response by him that he understood. One of the officers then read defendant a waiver of rights form and asked him "You wish to waive your rights which I just read to you, and give a statement now? Okay, would you sign this form right here." While a verbal affirmative response by defendant does not appear on the tape, both detectives testified that defendant nodded affirmatively. In addition, defendant did sign the form.
Under the test set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966) the state has a heavy burden to prove that a waiver of rights did indeed take place. See also La.R.S. 15:451. Whether or not an accused understood his rights and intelligently waived them must be determined on the facts of each case. See, e.g. Narro v. United States, 370 F.2d 329 (5th Cir.), cert, denied 387 U.S. 946, 87 S.Ct. 2081, 18 L.Ed.2d 1334 (1967); State v. *823 McNeal, La., 337 So.2d 178 (decided on rehearing September 13, 1976). Examining the circumstances of the waiver presented above, including the fact that defendant was informed of his rights twice and signed a waiver form, it would appear that the trial court correctly ruled that the waiver was valid. Under these facts, the attested to nodding of defendant's head, rather than a verbal response, on one occasion, hardly can be said to invalidate defendant's apparent comprehension and attendant free and voluntary confession.
With respect to recording of the statements, defendant contends that not all of his statement was taped. The facts as testified to by the police officers were that during the ride to Lafayette, after giving defendant his rights they questioned him as to his activities the preceding day; that among other apparently irrelevant admissions defendant told them about getting his car inspected and purchasing new tires on the previous day; that since defendant was not making admissions relevant to the offense for which he was arrested they turned the recorder off and did not question him further until they reached the office, but did tell him that they had finger prints found at the scene and that he would be fingerprinted for comparison; and that defendant was basically silent after that. When defendant was interviewed at the station, he signed a waiver of rights form and did give a confession at that time.
Defendant states that all of what he said in the police car was not on the recording played in the courtroom, that in addition he had told them that he was having an affair with the alleged victim and that on the previous day he had gone to visit the victim in order to break off their relations. He also stated that he was told to confess, as he did, in return for a promise to be let off in several days. In rebuttal testimony, one of the officers affirmatively denied that defendant had tried to tell them anything about an affair with the victim.
La.R.S. 15:450 states as follows:
"Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford."
While it does appear that the tape recording was turned off during the latter part of the ride from Breaux Bridge to Lafayette, the entire tape recording was played before the jury, the first portion thereof having been played only after a request by defense counsel. In addition, the officers testified as to what was said during the remainder of the ride and rebutted defendant's statement that he had indicated he had had an affair with the victim. Under these facts, there was compliance with the requirements of R.S. 15.450.
These assignments of error lack merit.
ASSIGNMENT OF ERROR NO. 5.
Defendant contends that the trial court erred in denying his motion for a mistrial on the grounds that at the close of the first day of trial, the men and women jurors were permitted to sleep in separate rooms.
Article 791 C.Cr.P. provides:
"[I]n capital cases, after each juror is sworn he shall be sequestered."
and that
"[A] jury is sequestered by being kept together in charge of an officer of the court so as to be secluded from outside communication."
The article does not require the jury be kept continually in one single group, but rather that they be sequestered so as to be secluded from outside communication. See State v. Cuchinelli, 261 La. 789, 261 So.2d 217 (1972); State v. Groves, 311 So.2d 230 (La.1975). The record reflects in the instant case that the male and the female jurors were permitted to sleep in separate rooms in the courthouse for the night and that each room was under the supervision of a bailiff. We find that the law was substantially complied with. Accordingly the assignment is without merit.
*824 ASSIGNMENT OF ERROR NO. 7.
By assignment of error number seven, defendant argues that reversible error occurred when during closing argument the district attorney commented to the jury on the defense counsel's failure to make an opening statement.
The thrust of a portion of the prosecuting attorney's argument was that while the state had given an opening statement outlining the facts it intended to prove, defendant had not done so; that defendant's testimony concerning the affair with the victim was less believable because the commitment to such course of defense was delayed until after defendant had opportunity to assess the quality of the state's evidence. The prosecutor thus commented several times upon failure of the defense counsel to make an opening statement.
The law, while requiring an opening statement from the state (See La.C. Cr.P. articles 766, 769) permits a defendant to waive opening statement. (See Article 765). Exercise of the legal right not to give an opening statement should not therefore be used to prejudice a defendant, it would logically seem. And Article 774[1] defining the scope of argument does not seem specifically to permit such comment. Furthermore, defendant's right to remain silent without being exposed to prejudicial inferences deriving therefrom could arguably be impaired by a prosecutor's comment on defendant's failure to make an opening statement. However, no cases have been cited to us nor have we uncovered any which discuss this narrow legal point.
We find it unnecessary in this case to resolve the legal question in light of the procedural position in which the matter is presented.
Only once to the prosecutor's several references did defendant object and on that occasion he moved for a mistrial (to which he might not have been entitled even if his claim is meritorioussee Article 770) and, in the alternative, that the comment be "stricken." The judge responded, not by denying the alternative mistrial motion, but by admonishing and instructing the jury that defendant had a right under the law to make or not make an opening statement as he saw fit. Counsel's succeeding comment ("and I chose not to do so, your Honor, and I have a right to do so") indicates that the judge's admonition, or instruction, to the jury, satisfied defendant's request that the district attorney's argument be "stricken."
There is no merit to assignment number seven.
We note that defendant's commission of the crime of aggravated rape, his conviction, and his sentence to death all occurred during the year 1975. The then prevalent aggravated rape statute, R.S. 14:42, has been found to suffer from the same constitutional infirmities as the United States Supreme Court, in Roberts v. Louisiana, ___ U.S. ___, 96 S.Ct. 3001, 49 L.Ed.2d ___ (1976), determined exists in our post-Furman murder statute. In accordance with our decisions in State v. Smith, 340 So.2d 247 (La.1976); State v. Watkins, 340 So.2d 235 (La.1976); State v. Sledge, 340 So.2d 205 (La.1976); State v. Morris, 340 So.2d 195 (La.1976); State v. Hunter et al., 340 So.2d 226 (La.1976); State v. Lee, 340 So.2d 180 (La.1976); State v. Craig, 340 So.2d 191 (La.1976), we must remand this case for resentencing of defendant to the most serious penalty for the next lesser included offense available at the time the crime was committed (vis., simple rape). As we noted in these cases, the legislature obviously intended to impose the most serious penalty available under the law. Although there is a range of from one to twenty years for simple rape, the most serious penalty is twenty years at hard labor.
*825 Accordingly the conviction is affirmed and the case is remanded for resentencing.
DENNIS, J., concurs.
SUMMERS, J., I concur with the holding on conviction and dissent from penalty for the reasons in the dissent I filed in State v. Lee, La., 340 So.2d 180.
NOTES
[1] "Art. 774. Argument; scope

The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant."