340 So.2d 235 (1976)
STATE of Louisiana
v.
Kenneth E. WATKINS.
No. 57904.
Supreme Court of Louisiana.
October 14, 1976.
Rehearing Denied November 18, 1976.
*237 W. S. McKenzie and Frank W. Middleton, III, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph Roy, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
A sixty-three year old nurse from a central placement service in Baton Rouge responded to a request for home nursing service and drove to defendant's home. Upon being admitted she was forcibly assaulted and raped. Thereafter she was placed in the trunk of her automobile and driven away. She was left in a wooded area, near a field, tied with a rope. She ultimately freed herself and was taken to the Sheriff's Office. She later identified defendant as her assailant.
Defendant was indicted for aggravated rape in violation of R.S. 14:42 and thereafter entered a plea of not guilty and not guilty by reason of insanity. The trial jury found him guilty as charged and he has been sentenced to death.
Defendant appeals the conviction and sentence relying upon fifteen assignments of error.
ASSIGNMENT OF ERROR NO. 1.
In assignment of error number one defendant alleges that the trial court erred in denying his motion to quash based on the systematic exclusion of women from the grand jury. He urges this Court to reconsider its previous rulings on this issue.
This very defendant has previously raised this issue before this Court in an application for a writ of mandamus prior to the trial. We denied him relief. State ex rel. Watkins v. Lear, 309 So.2d 343 (La.1975).
The issue was before the United States Supreme Court in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The Supreme Court held Louisiana's constitutional and statutory provisions excluding women from jury venire unconstitutional. However, in Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the Supreme Court ruled that the Taylor decision would not be applied retroactively as a matter of federal constitutional law. This Court has likewise held that Taylor v. Louisiana, supra., as a matter of Louisiana constitutional law, is not to be applied retroactively. State v. Gaines, 315 So.2d 298 (La. 1975); State v. Nero, 319 So.2d 303 (La. 1975); State v. Rester, 309 So.2d 321 (La. 1975); State v. Sonnier, 317 So.2d 190 (La. 1975).
As the grand jury indicted the defendant on December 17, 1974, one month before the *238 Taylor decision was handed down, Taylor is not applicable.
Assignment of error number one is without merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 14.
Defendant complains that the trial court committed error in denying his motion to quash on the ground that the death penalty is unconstitutional under the constitutions of the United States and the State of Louisiana (assignment number two) and he contends that the death sentence imposed is unconstitutional (assignment number fourteen). The assignments have merit so far as imposition of the death penalty is concerned in light of the recently decided United States Supreme Court decision in Roberts v. State of Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).
In accordance with our decisions in State v. Lee, 340 So.2d 180 (La.1976) and State v. Craig, 340 So.2d 191 (La.1976), we find that the case must be remanded for resentencing of defendant to the most serious penalty for a lesser included offense at the time the crime was committed (December 10, 1974). At that time, attempted aggravated rape was punishable by imprisonment for not more than twenty years. La.R.S. 14:27(D)(1). Simple rape carried a penalty of one to twenty years. La.R.S. 14:43. The legislature obviously intended to impose the most serious penalty available under the law. In this case, although there is a range of from one to twenty years, the most serious penalty is twenty years at hard labor.
ASSIGNMENT OF ERROR NO. 3.
In assignment of error number three defendant, complains that the trial court erred in admitting evidence of events and alleged criminal acts which took place after the alleged offense was committed. He argues that his relevancy objection was improperly overruled.
The facts surrounding the alleged rape are:
The defendant called a central nurseplacing service requesting a nurse to sit with his elderly mother. The victim in this case, a nurse, accepted this appointment of service, drove to defendant's home, parked her automobile and entered defendant's residence at which time she was forcibly assaulted and raped. Her hands and feet were tied and she was placed in the trunk of her automobile and driven away. She was left in a wooded area tied with a rope securing her to the area. The defendant drove away. She freed herself and approached a farmer working in a nearby field and hysterically told him that she had been raped. She was taken to the local law enforcement authorities and subsequently got in touch with her family and was driven home.
LSA-R.S. 15:441 provides:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. "Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
Connexity of evidence is a matter of fact for the jury to decide so long as the testimony or the objects introduced are shown to the satisfaction of the trial judge to have some relevancy; that is, some logical or rational connection with facts sought to be proved. State v. Lane, 292 So.2d 711 (La. 1974).
Testimony and physical evidence concerning the aforementioned events which took place after the rape and at locations away from the scene of the rape in this case were relevant and corroborative, and thus admissible.
Assignment of error number three is without merit.
ASSIGNMENT OF ERROR NO. 8.
In this assignment of error defendant complains of the trial court's permitting the state to offer as rebuttal evidence over his objection the tape of an oral inculpatory statement made by the defendant. We just recently had occasion to reverse *239 a conviction because, among other reasons, the prosecution waited until rebuttal to introduce a confession or inculpatory statement which in fact did not properly constitute rebuttal to the defendant's case. See State v. Turner and Glover, La., 337 So.2d 455 (La.1976). As we pointed out in Turner, the state may not reserve part of its case in chief for rebuttal after the defense has put on its case and when the defense can no longer present evidence to rebut the state's case, for among other reasons it is contrary to statute and to the rules of fair play. As is also noted in that case, however, this rule "cannot always be enforced with cast iron inflexibility and must yield in its application to the sound discretion of the trial judge whose ruling will not be disturbed except in extreme cases, as where the evidence has been kept back deliberately for the purpose of deceiving and obtaining an undue advantage of defendant." Furthermore, in Turner, the commission of the criminal act was very much in dispute and the evidence of the oral inculpatory statement submitted in rebuttal quite damaging to defendant's case.
This case is somewhat different from Turner.
Defendant had entered a plea of not guilty and not guilty by reason of insanity. Evidence that he had committed the rape was overwhelming and virtually undisputed. The principal issue was the insanity of the defendant at the time of perpetration of the crime. Our law imposes upon defendant the burden of proving insanity. See State v. Berry, 324 So.2d 822 (La.1976). Accordingly the state in presentation of its case in chief limited its proof to defendant's commission of the rape. When the defendant put on his case, he attempted to prove that he was insane at the time of the commission of the offense and he produced, among other evidence, the testimony of Dr. Curtis Steele who gave his opinion that defendant could not distinguish right from wrong at the time of commission of the offense, because he suffered from a "hysterical neurosis of the disassociated type." In the doctor's opinion, under stress, this defendant would disassociate from normal consciousness. Particularly, defendant contended in conversation with the various psychiatrists that he could not remember anything surrounding the incident. In effect he purported to suffer amnesia.
In rebuttal the state produced testimony of Dr. F. A. Silva (which is discussed in a bit more detail in the succeeding assignment). And the state also attempted to counter the defense position that defendant could not recall any events surrounding the incident and was in a disassociated (or unconscious) state at or about the time of this rape. They introduced the taped oral inculpatory statement given to the police in which the defendant exhibited an apparent awareness and a recollection of the events surrounding the incident.
The fact that this taped statement involved seriously inculpating admissions was hardly damaging to the defendant with respect to commission of the rape in view of the uncontroverted evidence that defendant had committed the offense. We find that it was relevant rebuttal evidence to the insanity defense, and in this respect for which effectively introduced, timely rather than belatedly presented.
The assignment is not meritorious.
ASSIGNMENT OF ERROR NO. 9.
When the state in rebuttal attempted to introduce into evidence the taped confession, or inculpatory statement, taken by the police shortly after defendant was turned over to them by his mother and stepfather, counsel moved to have it suppressed for the further reason that defendant did not have the mental capacity to have intelligently waived his constitutional rights.
The trial judge entertained evidence on the predicate, considered the conflicting expert medical testimony, and denied the motion to suppress. Defendant's assignment of error number nine arises from this ruling.
The evidence favorable to defendant on the question included the testimony of his *240 mother and stepfather that prior to their arrival, with defendant at the sheriff's office he appeared to be in a dazed condition, unresponsive and unaware of his general surroundings. His mother testified that before the date in question, on several occasions he had suffered blackout spells whereupon he was prone to act in a violent manner and that he had no recollection of these incidents. The parish coroner, Dr. Hipolite Landry, Jr., two months after the incident in question, found defendant unable to assist counsel in his defense, although at a later time prior to trial the coroner and Dr. Silva found that he was able to assist his counsel).
The defense psychiatrist, Dr. Curtis A. Steele, opined that at the time of the incident defendant was suffering from a hysterical neurosis of the disassociated type during which he was prone to disassociate from normal consciousness into a fugue state and do things over which he had no control. The police officers who took the taped statement from him testified essentially that defendant appeared nervous and at times irrational.
On the other hand, the psychiatrist appointed by the court, Dr. Silva, testified that he had examined defendant on three separate occasions. His opinion with respect to defendant's competence at or about the time of the incident, was that defendant was a disturbed person. His intelligence was low but he was not retarded. His grasp of reality was not very good but he was nonetheless legally sane, that is, he could distinguish right from wrong. He testified that defendant was not psychotic and that his purported amnesia concerning events surrounding the rape was questionable in light of defendant's differing ability to recollect, evident from the three examinations, or interviews. The trial judge apparently concluded that at the time the oral statement was given defendant was not suffering from such mental incapacity as would preclude his freely and voluntarily giving a statement. And, of course, there was no indication at all that the statement was coerced. Under the circumstances we cannot say that the trial judge erred. The finding of the trial judge in these respects is entitled to great weight. State v. Peters, 315 So.2d 678 (La. 1975).
ASSIGNMENT OF ERROR NO. 13.
In State v. Babin, 319 So.2d 367 (La.1975) we held that "when the trial judge was not included in the general charge instruction explaining or quoting the law applicable to a verdict of not guilty by reason of insanity, then upon defendant's request he must read the defendant's wholly applicable, wholly correct suggested charge to the jury. Article 807, C.Cr.P.' In that case we did not prescribe, and stated that we preferred not to prescribe, any particular form that such instructions must take.
In State v. Liesk, 326 So.2d 871 (La.1976), we held that "where the defendant properly pleads not guilty and not guilty by reason of insanity upon a proper request the law pertaining to the consequences of a verdict of not guilty by reason of insanity must be included in the charge to the jury."
Defendant contends that in this case, the trial judge advised counsel that he intended to instruct the jury concerning the consequences of the verdict of not guilty by reason of insanity. Accordingly, defense counsel did not present in writing or otherwise, a requested charge as to the applicable law (which appears generally in article 654 through 658 inclusive of the Code of Criminal Procedure). During the charge the trial judge did indeed instruct the jury on the effect of a verdict of not guilty by reason of insanity by paraphrasing appropriate portions of C.Cr.P. articles 654 and 655.[1]
After the charge was completed and the case submitted to the jury, counsel for defendant *241 objected, contending that the trial judge should not have omitted reference to the provision in the law for notice to the district attorney. In brief he claims the judge should have read the entirety of articles 654 through 658. Inasmuch as defendant did not present a requested special charge, in view of his belated and narrowly articulated objection, and in light of the trial judge's conscientious effort to comply with State v. Babin, supra, by instructing the jury as to the consequence of a finding of not guilty by reason of insanity, we find no merit in the assignment of error.

OTHER ASSIGNMENTS OF ERROR
The remaining assignments of error are likewise without merit. These include assignment of error number four, a complaint that the trial court failed to declare a mistrial after a state witness nonresponsively testified that she had ample time to get a good look at defendant "before and in the lineup"; assignment of error number five, wherein the defendant claims prejudice from the trial court's permitting the open court fingerprinting of defendant; assignment of error number six wherein for the same reasons discussed under assignment of error number three, above, defendant complained of allowing the testimony of a farmer who discovered the victim in the field where she had been left; assignment of error number seven, wherein for the reasons noted under assignment of error number three, above, defendant objected to the introduction of the rope used to tie the victim in the field, her purse, key ring, fountain pen, billfold and pictures discovered in the field; assignment of error number ten, a contention that the trial court erred in reading to the jury the provisions of R.S. 14:42; assignment of error number eleven wherein he claims that the court should have given the jury a responsive verdict of forcible rape notwithstanding R.S. 14:43.1 was not enacted until after the offense charged in the instant case; assignment of error number twelve, wherein defendant complains that the trial court erred by charging the jury that state law places the burden of proof of insanity on the defendant (see State v. Berry, supra.); assignment of error number fifteen, which is rendered moot by Roberts v. State of Louisiana, supra.
For the reasons assigned the conviction of defendant is affirmed, but the death sentence imposed upon him is annulled and set aside, and the case is remanded to the district court for resentencing.
AFFIRMED IN PART, REMANDED.
SANDERS, C. J., concurs in conviction but dissents from sentence and assigns written reasons.
SUMMERS, J., concurs in the conviction but dissents from the holding on penalty. See dissent in State v. Lee, La., 340 So.2d 180.
MARCUS, J., concurs in affirmance of defendant's conviction but dissents from penalty directed by majority for reasons assigned in his concurring and dissenting opinion in State v. Craig, 340 So.2d 191 (La.1976).
SANDERS, Chief Justice (concurring in affirmance of conviction but dissenting from the sentence).
I agree with Mr. Justice Summers that in adjusting to the decision of the United *242 States Supreme Court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), we need only remand the case for a sentence hearing by a jury to determine whether capital punishment should be imposed. In 1971, I advocated such a procedure following the United States Supreme Court decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). See my dissent in State v. Shaffer, 260 La. 605, 257 So.2d 121 (1971).
Absent majority agreement on the jury hearing procedure, however, I would order the trial judge to impose a sentence of life imprisonment. Reduction of the sentence for aggravated rape from death to twenty years is a far too drastic reduction. In my opinion, such a change does violence to legislative policy.
For the reasons assigned, I respectfully concur in the affirmance of conviction but dissent from the sentence.
NOTES
[1] The pertinent instruction was as follows:

". . . There has been some discussion by both sides in the argument concerning the results of the verdict of not guilty by reason of insanity. Article 654 of the Code of Criminal Procedure states that where a verdict of not guilty by reason of insanity is returned in a capital case, the Court shall commit the defendant to the proper state mental institution for custody, care, and treatment. Article 655 says when the superintendent of a mental institution is of the opinion that a person committed pursuant to Article 654, which I just read, can be discharged or can be released on probation without danger to others or to himself, he shall recommend a discharge or release of the person in a report to the Court by which the person was committed. A person committed pursuant to this article may make application to the Court by which he was committed for discharge or for release on probation. Such application by a committed person shall not be filed until the committed person has been confined for a period of at least six months after the commitment. If the determination of the Court is adverse, the applicant shall not be permitted to file another application until one year has elapsed from the date of the determination.. . ."