484 So.2d 870 (1986)
STATE of Louisiana
v.
Calvin WATSON.
No. 85 KA 0874.
Court of Appeal of Louisiana, First Circuit.
February 25, 1986.
Writ Denied May 30, 1986.
*871 Bryan Bush, Dist. Atty., Baton Rouge by Richard Sherburne, Asst. Dist. Atty., for plaintiff-appellee.
Gail Ray, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Calvin Watson (defendant) was indicted by the East Baton Rouge Parish grand jury and charged with aggravated rape, in violation of LSA-R.S. 14:42. He pled not guilty and was tried by a jury which returned the responsive verdict of guilty of attempted aggravated rape. The trial court imposed a sentence of fifty years at hard labor. Defendant has appealed his conviction and sentence, urging eight assignments of error. Assignments of error three, four and seven were not briefed on appeal and are, therefore, considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
Defendant was charged with the rape of a fifteen-year-old girl on the premises of the Greenville Head Start School in Baton Rouge. The victim testified that defendant and David Robins grabbed her as she walked across the school grounds June 21, 1984, at approximately 3:30 p.m.; that she did not know either of them but had seen them earlier passing on the street; that they tried to force her to kiss them; that when she refused, they picked her up and carried her up a flight of stairs to an outside landing where they took turns raping her; that defendant threatened her with a wine bottle to force her to remain quiet; and that she continued to scream and plead with them until a police officer arrived.
At the time of this incident, the school grounds were deserted because classes had been dismissed for the summer. An audio security system which included several microphones set up around and inside the school buildings had been installed by Sonitrol of Baton Rouge, Inc. The microphones were installed in such a manner that they would begin transmitting sounds to a central control office when activated by a noise louder than a preset standard. One of the microphones was apparently triggered by the screams of the victim, and the sounds were transmitted to the Sonitrol control office. Simultaneously, a video display terminal indicated the location of the sounds. This information was noted by Joan Hanley, the Sonitrol employee in the control room at that time. After listening for a few seconds, Ms. Hanley activated a tape recorder in the control room which recorded the sounds transmitted by the microphones. Simultaneously, Ms. Hanley contacted the Baton Rouge Police Department. An officer was dispatched to investigate the occurrence.
The victim's screams were also heard by Marie Johnson, who was walking across the school grounds on her way to visit a friend, Mary Dolly. Ms. Johnson testified that after she heard the screams she hurried to Ms. Dolly's house and told her about the incident; that Ms. Dolly quickly *872 dressed and together they returned to the scene.
Ms. Dolly testified that she also heard someone screaming, "Don't do that. Stop"; that they decided to notify the police; that as they were leaving the grounds to find a telephone, they saw a police patrol car; that they hailed the car and told Officer Michael Arnold what they had heard; that Arnold and the girls returned to the building.
Arnold testified that he heard the screams as he approached the building and saw a man, later identified as defendant, standing near the stairwell; that he questioned the suspect for a short period; that suddenly the man struck him and ran off; and that although Arnold gave chase, the man escaped.
Johnson and Dolly remained at the school and assisted the victim. They testified they saw a second man jump off the balcony and run from the scene. Ms. Dolly recognized this individual as David Robins, whom she had gone to school with.
Based on the physical description provided by the victim and Arnold, a photographic lineup was prepared which included defendant's photograph. Both identified him as one of the two perpetrators, and he was subsequently arrested for aggravated rape.

ADMISSIBILITY OF THE TAPE

(ASSIGNMENTS OF ERROR ONE, TWO AND FIVE)
Defendant argues the trial court erred by admitting the recording made by Sonitrol into evidence. In assignment of error number one, he submits the court erred by finding a sufficient identification and connexity to permit its introduction. In assignments of error two and five, defendant argues the court erred by denying his motion to suppress the tape and by overruling his objection to the introduction of the tape during trial.[1]
At the hearing on the motion to suppress, the State called several Sonitrol employees to identify the tape. Joan Hanley, who first heard the screams, identified the tape visually and through its contents as it was played in court. Ms. Hanley testified that she turned the recorder on a few seconds after she heard the screams and listened to the sounds from 3:37 p.m., when the transmission began, until her shift ended at 4:00 p.m. Although she was not present when the cassette tape was removed from the recorder, she identified handwriting on the tape's label as her supervisor's, Laura Hernandez. She testified that she had no doubt that the tape she identified was the one made because no other incident of this sort involving Sonitrol had ever taken place. She found the tape very emotional.
Erik Auxt, a Sonitrol salesman, identified the tape at trial and testified that he was present in the control room during the taping; that the handwriting on the tape was Merle Wilging's, the company's owner; that he saw Wilging write on the tape; that he later admitted that he did not actually see Wilging mark it; that he saw Wilging give the tape to the police officer early the next morning, specifically between 8:00 and 9:00 a.m.; that the tape upset him a great deal, and, "it makes me wonder what what this girl in the school building must have gone through ..."; that an employee of Sonitrol left the company because of this incident; and that he personally went to the school later that evening and spoke with a police officer about the incident.
Detective Erika D'Amico, assigned to the juvenile sex crimes unit of the Baton Rouge City Police, also testified. In contrast to Auxt's testimony, she stated that she picked the tape up from the Sonitrol office at approximately 3:45 p.m. on the day after the incident. She testified that she found the tape "bone-chilling." Detective D'Amico was able to identify the tape from the markings she placed on it when *873 she received the tape from the Sonitrol office. Based on the testimony of these three witnesses, the trial court found a sufficient foundation had been established for the introduction of the tape into evidence at trial. The court also listened to the tape and found its probative nature outweighed its prejudicial effect. Thereafter, defendant made an application for writs to this court, contesting the admissibility of the tape. His application was denied without comment. Defendant then applied for writs to the Louisiana Supreme Court. Noting the existence of a remedy by appeal in the event of conviction, the court declined to interrupt the trial to rule on the admissibility of evidence. 460 So.2d 1049 (La.1984). Defendant again objected before the tape was admitted at trial. The objection was overruled, and the tape was played before the jury.
Demonstrative evidence can be admitted into evidence only after it is shown that, more probably than not, the evidence is connected with the case. That foundation can be laid by establishing a chain of custody of the evidence or by visual identification. Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Day, 468 So.2d 1336 (La.App. 1st Cir.1985).
Defendant argues the contradictory testimony presented during the suppression hearing precluded a finding that the visual identification was sufficient. He further argues that the State failed to present a sufficient chain of custody to satisfy the foundation requirements. In particular, defendant argues the testimony of Merle Wilging was necessary to establish a complete chain of custody. (We note that Wilging did testify at trial and said that he received the tape from Laura Hernandez and locked it in his office until the police officer retrieved it. The tape was identified through the handwriting of Ms. Hernandez, but she did not testify either at the hearing on the motion to suppress or at trial.)
We find the identification presented by the State was sufficient. A continuous chain of custody is not essential to enable the State to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized. State v. Vaughn, 431 So.2d 763 (La.1983). The testimony clearly established that the incident recorded by Joan Hanley was unique. Ms. Hanley listened to the tape in court and had no doubt that the tape was the one she made that day. We find no merit to defendant's contention that she could not identify the tape because she was not an expert in voice identification. Ms. Hanley identified the tape by reference to the circumstances under which she originally heard the screams and did not identify the voice as the victim's. Her testimony shows that she aurally and visually identified the tape. Although a complete chain of custody was not established, it is more probable than not that the tape recording introduced at trial was the original tape made by her. See State v. Smith, 466 So.2d 1343 (La. App. 3rd Cir.1985).
In arguing the foundation is insufficient because the State failed to offer clear and convincing proof of the accuracy and authenticity of the tape, defendant suggests this court should adopt the standard set forth in United States v. Fuentes, 563 F.2d 527 (2nd Cir.1977), cert. den. 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320. In that case, the court noted that recorded evidence is likely to make a strong impression upon a jury and is susceptible to alteration, and it endorsed the general standard requiring the government to provide clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings. Defendant attempts to distinguish Vaughn, which followed the "more probable than not" standard, because Vaughn was concerned with a recorded conversation, the words of which constituted the offense; and because the police officer who supervised and monitored the recording testified in court on the accuracy of the recording. First, we note that the tape in Vaughn, constituting the *874 actual offense (extortion), would not be subject to a less stringent standard than the tangential evidence offered herein. Further, the employee who supervised and monitored the recording (Ms. Hanley) testified in court that it accurately depicted the sounds she heard. We do not find Vaughn to be authority for defendant's inference that a tape is made inherently more reliable when made by a police officer instead of a disinterested citizen.
Defendant also argues that the tape recording was not relevant and should have been excluded on that ground. Relevant evidence is evidence tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. LSA-R.S. 15:441. Any evidence, whether direct or circumstantial, is relevant if it tends to prove or disprove the existence of a material fact. State v. Patch, 470 So.2d 585 (La.App. 1st Cir.1985), writ denied, 475 So.2d 358 (La. 1985). Evidence of the circumstances under which the recording was made establishes its relevance. The foundation had been laid before the tape was offered.
All evidence is subject to constitutional guarantees of due process and a fair trial before an impartial jury. The right to a fair trial requires that, even though evidence may be deemed relevant because it has probative value, the court must evaluate any counterbalancing factors which could lead it to exclude this otherwise relevant evidence if the probative value is outweighed by such factors as the danger that the evidence may unduly arouse the jury's emotions of prejudice, hostility or sympathy; the probability that the evidence may create a collateral issue which will unduly distract the jury from the main issue; delay in the trial; and the danger of unfair surprise. State v. Brown, 428 So.2d 438 (La.1983); State v. Martin, 400 So.2d 1063 (La.1981). The record clearly shows the powerful impact the tape had upon the Sonitrol employees and Detective D'Amico. We have reviewed it. It begins with the cries of the victim and consists of her pleading, "Let me go" repeatedly for about ten minutes. Interspersed with her pleas were her sobs and occasional screams. From time to time she implores, "Get away from me" and "[Ya'll] please don't." After sounds which indicate others might have arrived on the scene, the victim begins to scream for help. Throughout most of the tape, male voices can be heard. Although the words are indistinct, the tone contrasts sharply with that of the victim. It is impossible in the foregoing brief summary to completely depict what is revealed by the tape. The tape positively indicates that the victim is in extreme distress.
We agree with the trial court that the tape recording was relevant. It tended to show (1) the corpus delicti, (2) the victim's resistance, and (3) the victim's lack of consent. On the other hand, the tape does invoke sympathy for the victim, and it is also prejudicial to the accused. A finding of prejudice, however, does not automatically make this evidence inadmissible. As the State points out, any evidence which tends to prove the guilt of the accused is necessarily prejudicial to his interest. If the probative value of the evidence offered exceeds the prejudicial impact, it is admissible notwithstanding prejudice which might also result.
The State submits that the probative value of the tape is great because it establishes the elements of resistance and the victim's lack of consent. Defendant argues the tape is actually of minimal probative value because it establishes only that the victim was detained against her will. The defense offered to stipulate that the tape records a voice crying and screaming, "Let me go" over sixty times, that there are screams on the tape, and that there are unidentified voices on the tape. This stipulation was rejected.
Defendant also argues that if his proposed stipulation had been accepted, it would have taken away any probative value the tape may have had. In State v. Gilmore, 332 So.2d 789, 796 (La.1976), the Supreme Court said:
[W]here the State's proof has been rendered unnecessary by defendant's judicial admission, the prejudicial nature of the evidence assumes added significance *875 and correspondingly reduces the State's legitimate interest in its admission.
The willingness of the defense to stipulate to the contents of the evidence is relevant to determining the State's need for, and so the probative value of, that evidence. The Supreme Court has consistently held that the State "cannot be robbed of the fair and legitimate moral force of its case merely because the stipulation is offered." State v. Lindsey, 404 So.2d 466, 475 (La.1981). To much the same effect were the statements of the Supreme Court in Gilmore, 332 So.2d at 796:
On the other hand, a defendant may not be permitted to rob the State's evidence of its fair and legitimate weight by means of a unilateral stipulation:
"Nevertheless, a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate moral force of his evidence; furthermore, a judicial admission may be cleverly made with grudging limitations or evasions or insinuations...."
We find that the exclusion of the recording on the basis of defense counsel's proposed stipulation would have unjustifiably deprived the State of the moral force of its evidence. The recording was highly relevant to several of the central issues of the case; the probative force of the recording exceeded that of other evidence tending to establish the same fact; and a mere verbal stipulation would not have captured the forcefulness of the recording itself.
The trial court, after considering the testimony and arguments of counsel presented at the hearing on the motion to suppress, concluded that the probative value of the recording outweighed its potential prejudicial effect and ruled that the tape was admissible. The trial court did not abuse its discretion in so ruling. These assignments of error are without merit.

ADMISSION OF "ANATOMICALLY CORRECT" DOLLS

(ASSIGNMENT OF ERROR NUMBER THREE)
Defendant submits that the trial court erred in permitting the State to introduce two dolls into evidence. These dolls are apparently manufactured to assist children in their expression of sexual terminology and description of external genital features. Defendant objects because, he asserts, they are irrelevant and because no evidence was established to show their anatomical accuracy.
During the victim's direct examination, she testified that defendant inserted his penis into her vagina. The State showed the dolls to her to illustrate her knowledge of male and female genitalia to the jury. Defendant did not object to the use of the dolls for the exhibition. Upon the conclusion of the State's case-in-chief, the dolls were offered into evidence and defendant objected. The objection was overruled, and the dolls were admitted.
All evidence which is relevant to a material fact issue, necessary to be known to explain a relevant fact, or which supports an inference raised by such a fact is admissible, except as otherwise provided by the constitutions of the United States or this State. LSA-R.S. 15:435, 441; State v. Kahey, 436 So.2d 475 (La.1983). Our law defines relevant evidence as "that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent." LSA-R.S. 15:441. Relevancy of evidence is determined by the purpose for which it is offered. Generally, an appellate court places great weight upon a trial court's ruling on the relevancy of evidence and should not reverse unless a clear misuse of discretion has occurred. Kahey, 436 So.2d at 491-492.
The connexity of evidence is a matter of fact for the jury to decide so long as the testimony or the objects introduced are shown to the satisfaction of the trial judge to have some relevance, that is, some logical or rational connection with facts sought to be proved. State v. Watkins, 340 So.2d 235 (La.1976), cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977).
*876 Testimony by the victim of defendant's actions was relevant to establish the elements of aggravated rape. To this end, the dolls were essentially used to corroborate her testimony that she knew what a penis and vagina were. The dolls were relevant to a material fact issue.
Defendant also argues the dolls were inadmissible because the State failed to present evidence to show that the dolls' genitalia were anatomically correct. The State concedes that such a foundation was not laid but argues this omission was harmless error because the jury was capable of determining the accuracy of the features. We agree.
Defendant does not allege or show specific prejudice resulting from the State's failure to establish the proper foundation. Absent such a showing we find that no substantial rights of defendant were affected. La.C.Cr.P. art. 921. See State v. Nix, 327 So.2d 301 (La.1975), cert. denied, 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976). This assignment of error has no merit.

EXCESSIVE SENTENCE

(ASSIGNMENT OF ERROR NUMBER FOUR)
Defendant submits that the trial court erred by imposing an excessive sentence. He argues that the sentence of fifty years at hard labor, the maximum sentence allowable for the offense of attempted aggravated rape, is excessive because defendant was only eighteen years old at the time of the offense, his first felony conviction. Further, he claims the trial court inadequately considered other mitigating factors, including the fact that the victim suffered little physical injury. Finally, he claims that the maximum offense is not justified compared to sentences meted in comparable cases.
The Louisiana Supreme Court has held that the imposition of an excessive sentence is prohibited by La. Const. art. 1 § 20. A trial judge has great discretion in imposing a sentence within the statutory limits and it will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475 (La.1982). Even a sentence falling within the applicable statutory limits may constitute excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979).
Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. State v. Guiden, 399 So.2d 194 (La.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Reed, 409 So.2d 266 (La.1982).
La.C.Cr.P. art. 894.1 sets forth three factors which justify a sentence imposing imprisonment, and eleven other factors which tend to indicate when suspension of sentence or probation is appropriate. The statute provides that the latter factors, "while not controlling the discretion of the court, shall be accorded weight" by the trial court in its sentencing decision. It requires that the trial court "shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence."
The types of factors which should be considered by a trial court before the imposition of a sentence on a particular offender include the offender's personal history, his prior criminal history, the seriousness of the crime, the circumstances of the offense, the likelihood defendant will commit another crime, and his potential for rehabilitation. When the trial judge imposes a sentence without adequate compliance with the mandatory requirements of La.C.Cr.P. art. 894.1, this court may vacate a sentence and remand for resentencing when the reasons for a sentence that is apparently severe or arbitrary in relation to the particular offender and the actual offense committed do not appear in the record.
While the trial court could have articulated more of the Article 894.1 factors than *877 it did, we note that it ordered and considered a presentence investigation; that the Corrections Department's recommendation was that defendant should be punished to the full extent of the law; that while defendant had no prior felony record, he had just turned eighteen and had a significant juvenile record since he was fifteen years old.
The trial court specifically noted that:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
Defendant argues in mitigation that the victim was not physically injured. She received a slight abrasion to her low back. Fortunately for her the police arrived while the crime was in progress. While her physical injuries were slight, the evidence clearly depicts the mental anguish, terror and fear to which this fifteen-year-old girl was subjected. Notwithstanding her pleas and cries which continued for approximately ten minutes, defendant continued his barbarous and animal-like assault.
We have previously held that the maximum sentence may be imposed only in cases involving the most serious offenses and worst offenders. State v. Easley, 432 So.2d 910 (La.App. 1st Cir.1983). This heinous crime warranted the maximum sentence permitted by law. The trial court did not abuse its discretion here. This assignment of error is without merit.
Defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The State and defense stipulated that the evidence taken at an evidentiary hearing held on November 5, 1984, before Judge Leo P. Higginbotham on co-defendant David Robins' motion to suppress physical evidence would be adopted by this defendant.