499 So.2d 94 (1986)
STATE of Louisiana
v.
David ROBINS.
No. 85 KA 0751.
Court of Appeal of Louisiana, First Circuit.
August 19, 1986.
Writs Denied December 5, 1986.
*97 Bryan Bush, Dist. Atty. by Richard Sherburne, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Kathleen S. Richey, Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
In an earlier opinion handed down on February 25, 1986, we remanded this matter to the trial court with instructions to take additional evidence from Berryman Williams, a State witness who had not been permitted to testify as to his knowledge of the victim's general reputation for truth in the community. State v. Robins, 484 So.2d 877 (La.App. 1st Cir.1986). The trial court has complied with our instructions and has filed with us a transcript of the hearing it conducted pursuant to the remand. Therein, Berryman Williams testified that he did not know the victim's general reputation for truth in the community.
Our earlier opinion set forth in detail the facts surrounding defendant's prosecution for aggravated rape in violation of LSA-R.S. 14:42. Accordingly, we will simply refer to said opinion rather than repeat the facts in this opinion.
We are now in a position to treat defendant's remaining allegations of error which we held in abeyance pending compliance with our remand instructions.

ADMISSIBILITY OF THE TAPE

(ASSIGNMENTS OF ERROR 1, 2 AND 5)
Calvin Watson, the co-defendant, raised the very same issues relative to the tape's admissibility in his appeal, which we denied in State v. Watson, 484 So.2d 870 (La.App. 1st Cir.1986). For the reasons articulated in detail in Watson, which we adopt in toto for purposes of defendant's appeal, we deny his assignments of error relative to the admissibility of the tape. We also note that the Louisiana Supreme Court denied Calvin Watson's application for writs at 488 So.2d 1018.

DENIAL OF RIGHT OF CONFRONTATION

(ASSIGNMENT OF ERROR 41)
As noted by us in our earlier opinion in Robins, 484 So.2d at 880-881, we agreed with defendant that the trial court erred in sustaining the State's objection to Berryman Williams' testimony relative to the victim's reputation for truth. As aforesaid, we remanded to afford the trial court an opportunity to correct that error. The trial court held an evidentiary hearing in compliance with our instructions. That hearing established that Williams did not know the victim's general reputation for truth in the community. The remand has corrected any claim of denial to the right of confrontation, and, accordingly, this assignment of error is without merit.

DENIAL OF CONTINUANCE

(ASSIGNMENTS OF ERROR 5, 6 AND 43)
These assignments of error were disposed of in our original opinion. See Robins, 484 So.2d at 879-880.

*98 LIMITATION OF DEFENSE CROSS-EXAMINATION

(ASSIGNMENTS OF ERROR 7 AND 9)
Defendant argues the trial court improperly restricted his right of cross-examination by sustaining an objection to a question designed to reveal whether or not the victim was competent to make the legal or medical conclusion that a rape had occurred.
The victim testified on direct examination that she had been raped, that defendant had sexual intercourse with her, and that he placed his penis into her vagina. On cross-examination, defense counsel again asked her if defendant's penis entered her vagina. After obtaining an affirmative response, counsel then asked, "Did he then begin thrusting as in a normal act of sexual intercourse?" The State objected, and the court sustained the objection. Defendant now argues that the court denied his right of confrontation and that he was entitled to challenge the basis of the victim's opinion testimony.
The victim's testimony was not opinion evidence. Further, the question was unlikely to furnish a basis for the information allegedly sought.
Defendant argues that the line of questions was designed to test the victim's knowledge of the actual act of sexual intercourse and was crucial because of her previous inaccurate and vague definition of rape.
Although the victim testified quite positively that she was raped, that defendant had sexual intercourse with her and that his penis entered her vagina, cross-examination revealed the victim did not understand the meanings of the terms she used. Defendant was, therefore, entitled to examine her knowledge of the acts she described. It is obvious, however, that the question to which the State objected would not have elicited the information defendant allegedly sought. It cannot seriously be contended that an act of rape and an act of voluntary intercourse can be equated. By asking for a comparison of the two sexual acts, defendant possibly sought inferentially to impeach the victim's testimony that she had been a virgin prior to the assault. We do not find the denial of this line of questioning to have compromised defendant's right of confrontation. The trial court has a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness. LSA-R.S. 15:275. A conviction will not be reversed because of the trial judge's control of the witness's examination unless an abuse of discretion is shown. State v. Chapman, 410 So.2d 689 (La.1981). The court correctly found the question, as phrased, unnecessary and irrelevant.

OPINION TESTIMONY BY LAY WITNESSES

(ASSIGNMENTS OF ERROR 23, 24 AND 33)
By these assignments of error, defendant submits the trial court erred by permitting non-expert witnesses to give opinion testimony. Specifically, defendant argues the court erred in accepting testimony by Sonitrol employees Joan Hanley and Merle Wilging that the voice on the tape seemed to be that of a female and that the tape accurately reflected the sounds they heard on the date of the incident.
Generally, a lay witness can testify only to the facts within his knowledge, not to impressions or opinions. LSA-R.S. 15:463. However, a witness is permitted to draw reasonable inferences from his personal observations. State v. Vanderhoff, 415 So.2d 190 (La.1982). There are two pertinent questions: (1) Was the testimony speculative opinion evidence or simply a recitation of or inferences from fact based upon the witness's observations; and (2) if erroneously admitted, was the testimony so prejudicial to defendant as to constitute reversible error. See State v. Alexander, 430 So.2d 621 (La.1983).
There exists no bright line between opinion and fact. State v. Short, 368 So.2d 1078 (La.1979), cert. denied, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). With *99 regard to LSA-R.S. 15:463, the Louisiana Supreme Court has indicated that "the opinion rule should not be applied so strictly as to exclude first-hand testimony that may be several inferences removed from raw sense perceptions, yet more helpful to the jury than mere recitation of such perceptions." Short, 368 So.2d at 1081. If the testimony constitutes a natural inference from what was observed, there is no prohibition against it as the opinion of a non-expert as long as the lay witness states the observed facts as well. State v. Roche, 341 So.2d 348 (La.1976).
Testimony by the Sonitrol employees that the voice was that of a female was not opinion testimony, but a natural inference. However, the witnesses were not qualified to state that the sounds on the tape were the same as those heard on the day of the incident, and such testimony could not be justified as a mere inference from other known facts. No evidence was ever presented to indicate the cassette had been altered in any way. We conclude that, under the facts presented herein, defendant was not prejudiced by the ruling; and it constituted harmless error.
Defendant further urges the court erred in permitting the victim to testify that the defendant had sexual intercourse with her and that he raped her. He alleges this testimony calls for a legal conclusion which the witness, as a lay person, was not qualified to give.
The victim was certainly competent to describe the events which occurred to her. We decline to subscribe to defendant's view that only a trained expert can determine whether sexual intercourse occurred. The victim testified that the defendant placed his penis into her vagina. Defendant did attempt to impeach her testimony on the grounds that she did not understand the meanings of the terms she used. Her testimony that defendant had sexual intercourse with her is not opinion testimony.
Defendant argues that the victim's characterization of the incident as "rape" was a legal conclusion. Although it is true that the sense in which rape must be proven to establish a criminal offense is a factual conclusion for the trier of fact, it is also true that no expert can determine, absent evidence of injury or having witnessed the event, that any given act of sexual intercourse was a legal rape without interrogating the parties. In this sense, the determination of rape is not subject to opinion evidence. Further, any lay witness is capable of inferring that an act of forced sexual intercourse constitutes rape. We find no merit to defendant's argument.

IMPROPER NOTICE OF INTENT TO USE INCULPATORY STATEMENT

(ASSIGNMENT OF ERROR 4)
Defendant argues that the trial court erred in permitting the State to introduce hearsay statements of co-defendant Calvin Watson.
Prior to trial, defendant filed a motion for discovery in which he sought to determine if the State intended to use hearsay statements of co-conspirators, and the State responded that no such statements were in its possession. On the date trial began, the State provided defendant a notice pursuant to LSA-C.Cr.P. art. 768, notifying defendant of its intent to use inculpatory statements of the defendant and hearsay statements of co-conspirators. Defendant sought an in limine ruling that the statements would not be admissible because the defense had been planned in reliance on the State's answer to the discovery motion that it did not have a statement of a co-conspirator in its possession. The State argues that the discovery answer is correct because the case did not involve a conspiracy, and thus there could be no co-conspirators. Further, the State contends that the "768" notice was filed in the event a conspiracy theory developed during trial.
We agree that the State's answer to discovery and the pretrial notice provided to the defense are contradictory. Under the specific facts of this case, however, we do not find that defendant was prejudiced by the State's conduct.
*100 Contrary to arguments advanced during trial, the State is not entitled to sidestep the discovery procedures under the guise of anticipating a theory that might develop during trial. However, the failure of the State to comply with discovery procedures does not automatically require reversal; rather, the court must examine the circumstances to determine whether defendant was actually prejudiced by the non-disclosure. State v. Vaccaro, 411 So.2d 415 (La.1982). The statements to which defendant objected concerned the interchange between Calvin Watson and the police officer who first arrived on the scene. The officer, Michael Arnold, testified as follows:
Mr. Watson advised me his name was Robert Johnson, and he advised me that was his woman at the top of the stairwell, and he said something to the effect that you know how that is and.
We do not find defendant could have been prejudiced by the admission of this statement or by the failure of the State to disclose the existence of the statement.
Defendant further argues that the "768" notice was too vague because it did not set forth with specificity the date, occasion, or person to whom the statement was made in order to provide adequate notice to the defendant. In a bench trial, however, the defendant is not entitled to the notice provided by LSA-C.Cr.P. art. 768. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Ohrberg, 448 So.2d 1316 (La.App. 1st Cir.1984). Not being entitled to such notice in the first instance, defendant may not complain of its content. State ex rel Graffagnino.

ALIAS AS ORAL INCULPATORY STATEMENT

(ASSIGNMENT OF ERROR 22)
Defendant argues that the trial court erred in permitting the State to introduce evidence that he told the officers that his name was David Black when he was booked. Defendant argues this statement constituted an inculpatory statement because the State intended to connect him with a jersey found at the scene of the incident with the name "Black" stenciled on the back of it. He contends, therefore, that the State in its discovery answers incorrectly denied that it had a statement made before or after arrest.
We agree that the evidence of defendant's alias was intended to connect him with the scene and thus to show guilt by implication. Therefore, although we do not find that evidence of a defendant's name or alias will be considered necessarily inculpatory, under the facts set forth herein the State intended to use the name in that manner, and the State should have provided this information to defendant in its discovery response.
Although we find the State did not comply with discovery procedures, we do not find defendant was prejudiced thereby. It is true that the alias connected him with the shirt found at the scene and the victim's statement, but the victim positively identified defendant and stated that he committed the offense. In light of the positive nature of her direct testimony, we do not find defendant was prejudiced by the inference to be drawn through the use of this statement.
Defendant also argues the evidence of his alias was not admissible because the State had not shown that he had been advised of his Miranda rights. We conclude, however, that defendant's statement was given spontaneously and voluntarily. Volunteered statements of any kind are not barred by the Fifth Amendment. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Because the inculpatory statement was an unforseeable result of police conduct rather than police "interrogation," the oral inculpatory statement was properly ruled admissible. See State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981).

QUALIFICATIONS AND TESTIMONY OF EXPERT WITNESSES

(ASSIGNMENTS OF ERROR 18, 37, 38 and 39)
In assignment of error 18, defendant urges that the trial court erred in permitting *101 a State witness, Officer Charles Andrews, to testify as an expert witness without having been qualified as such. In assignments of error 37 through 39, defendant urges that the trial court erred by overruling his objection to the qualification of Dr. Merritt Melker, the physician who performed an examination of the victim after the incident, as an expert in the field of obstetrics and gynecology, and by permitting Dr. Melker to testify outside his area of expertise.
The defense called Dr. Melker to identify the report on his examination of the victim. On cross-examination, the State sought to qualify him in the fields of obstetrics and gynecology in order to obtain an opinion on whether the victim had sexual intercourse on the date of the examination. Defendant objected to any opinion testimony because he had not been qualified as an expert. The State then established the doctor's qualifications and tendered him as an expert witness. Over defendant's objection, the court accepted him as an expert. Dr. Melker testified that he could not give an opinion as to whether the victim had intercourse on that date. Subsequently, the State asked the doctor if he was an expert in the field of examinations of rape victims and rape. Defendant objected, urging the question was improper because the doctor had not been qualified as an expert on rape, but on gynecology and obstetrics. The trial court found that Dr. Melker was qualified to testify as an expert on the subject of rape because "the greater including the lesser would thereby qualify him to testify in that area."
Defendant argues the court erred initially in accepting Dr. Melker's qualification as an expert in the field of gynecology and obstetrics because he was not board certified in that field (although he is eligible to take the qualifying examination); because he had never testified in court, nor ever qualified as an expert witness; and because he was not qualified to testify as an expert in rape examination.
The competence of an expert witness is a question of fact to be determined by the trial court, and the trial court is vested with wide discretion in its determination. State v. Beridon, 449 So.2d 2 (La.App. 1st Cir.1984), writ denied, 452 So.2d 178 (La. 1984). Such discretion will not be disturbed on appeal in the absence of a clear showing of abuse.
We find no abuse of discretion in the court's acceptance of Dr. Melker. His qualifications were established by education, medical residency, as well as his work in that field. His lack of board certification does not preclude a finding that he is capable of rendering expert testimony in the field of his experience. Further, we find no merit in defendant's argument that Dr. Melker was allowed to testify beyond his field of expertise. We cannot agree with the trial court, however, that an expert in a general field is necessarily an expert on each distinct component of that specialty; Dr. Melker's qualifications to testify in the field of rape examination were established before the court accepted him as an expert in rape cases. This determination was evidently based as much on his experience in the examination of rape victims as his educational background in the area of rape. These assignments of error have no merit.
Defendant also argues the court erred in permitting Officer Andrews to testify regarding the removal of fingerprints from evidence. Defendant's position is that the evidence should not have been allowed because the State failed to qualify Officer Andrews as an expert witness and because the testimony he provided is not within the general knowledge of the lay person.
Andrews testified that he had attended the F.B.I. academy and several seminars on fingerprint evidence, and that he had received on-the-job training. Ideally, the court should permit defendant to traverse the qualifications of a witness testifying in such a defined area; however, we find no reversible error herein. Although Andrews might not have technically qualified as an expert in fingerprint removal, this was a judge trial and prejudice was minimal *102 at best. See State v. Sheppard, 466 So.2d 493 (La.App. 1st Cir.1985).

RULINGS ON THE ADMISSIBILITY OF EVIDENCE

(ASSIGNMENTS OF ERROR 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 25, 26, 27, 28, 30, 31, 32, 34 and 35)
In these assignments of error, defendant submits the trial court erred in permitting the State to introduce items which were irrelevant, constituted inadmissible hearsay, and were admitted without the requisite foundation.
In assignments of error 17, 28, 34 and 35, defendant argues the trial court erred in admitting a pack of Kool cigarettes that was recovered from the location, as well as the identification evidence obtained from the package.
The investigating officers failed to mark the pack in any manner before it was removed from the scene. In court, it was identified visually. The State argues that it was particularly distinguishable because the pack had been opened from the bottom. Defendant submits the evidence was not admissible because no testimony connected it with the defendant (or Calvin Watson), and it was therefore irrelevant and, further, because the State could not establish that the cigarette package entered into evidence was the same one removed from the scene.
Defendant was identified through his fingerprints, which were lifted from the cigarette package. The State never established its connexity to defendant at the time in question, and it was clearly irrelevant. We find, however, that the admission of the cigarette pack and fingerprint evidence was not reversible error. We find it is unlikely that this evidence had any effect on the trial judge's decision. See State v. Boutte, 384 So.2d 773 (La.1980).
In assignment of error 27, defendant says the trial court erred in admitting into evidence a wine bottle taken from the scene.
The victim testified that she saw defendant hitting the wall with a wine bottle and that Watson threatened her with the bottle while Robins was raping her. Throughout the trial, the State argued that this bottle was used as a weapon, thus constituting one basis for a charge of aggravated rape.
Defendant argues, and we agree, that the foundation for the admission of the evidence was not sufficient. Officer Cockran of the Baton Rouge City Police testified he retrieved a green wine bottle from the scene and put it into an evidence envelope without marking it in any manner. This envelope was then sent to the State Police Crime Laboratory for fingerprint analysis. Charles Andrews from that office testified that it was received by someone in his office. Although he could not say from his personal knowledge, he testified that he assumed it was Libby Martin, the only technician who receives evidence. The State did not present Ms. Martin's testimony, nor that of anyone else in that office to support the chain of custody. Mr. Andrews testified only about the standard procedures for receiving evidence and maintaining its identification. He did not state that those procedures were utilized in this investigation. We conclude that the State did not present a sufficient showing of a chain of custody.
The State also attempted a visual identification of the bottle. The victim identified it as the weapon used to threaten her. Marie Johnson identified it from a photograph as a Thunderbird wine bottle which she saw at the scene. Officer McMillan testified that he saw a green wine bottle on the stairs when he investigated the call. Officer Cochran identified the bottle as the one he removed from the scene. These witnesses identified the bottle by its color and by the fact that a similar wine bottle had been at the scene. This item is not so sufficiently distinctive that it is subject to a ready visual identification.
We find, however, that its admission did not constitute reversible error. Although the trial judge may have considered *103 the victim's testimony that a bottle was used in an aggravating manner, the court's verdict could have been derived either from a finding that the defendant threatened the victim with or actually used a weapon, or that the victim resisted to the utmost. The court could have found that a bottle was used as a weapon without determining specifically that this bottle was that weapon. In any event, a judge, by virtue of his training in law, is able to disregard irrelevant matters which are possibly prejudicial. State v. Gallow, 452 So.2d 227 (La.App. 1st Cir.1984), writ denied, 456 So.2d 1016 (La. 1984). We find no substantial rights of the accused have been affected. LSA-C.Cr.P. art. 921.
In assignment of error 19, defendant urges the trial court erred in permitting the State to offer hearsay testimony.
In connection with the fingerprint evidence obtained from the cigarette package and other State exhibits, Charles S. Andrews, from the Louisiana State Police Crime Laboratory, testified that he examined the items brought to his office by the city police. During his testimony, he referred to a report he had brought with him. After defendant was permitted to examine the report, it was discovered that Andrews had not prepared it; defendant then objected to the testimony as hearsay. Without sustaining defendant's objection, the court thereafter instructed the witness to testify only from his personal knowledge.
Although the evidence did constitute inadmissible hearsay, we cannot find that defendant was prejudiced by the introduction of this evidence. Therefore, we find no substantial rights of the defendant were affected. LSA-C.Cr.P. art. 921.
In assignments of error 20 and 21, defendant also argues that the court erred in admitting hearsay evidence. He says the State's fingerprint identification expert, Sybil Guidry, should not have been permitted to testify about the comparison she made between the prints removed from the pack and a "known" print of David Robins because she was not the custodian of the fingerprint records; and thus the "known" print, obtained from State Police files, was not admissible as a business record.
The fingerprint file card was not admitted into evidence. We have already found that the admission of the Kool cigarette package was not reversible error. We also find that Ms. Guidry's comparison of the prints removed from the cigarette package with the prints she took in open court was not reversible error.
In assignments of error 16, 25 and 30, defendant urges the trial court erred in the admission of a jersey with the word "Black" on the back of it, and in the admission of a photograph depicting this exhibit.
Defendant argues that this evidence was inadmissible because its relevancy was never established. He says that the shirt was one of a number of items found at the school, and its connection with defendant was mere conjecture.
The State urges the shirt was proven to be "logically relevant." This argument is based on two grounds: the defendant's statement (upon being booked after his arrest) that his name was "David Black"; and the victim's testimony that defendant told her, "if I went and told the police, just tell them that he was black and crazy and they'll know who he was."
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. Facts necessary to explain a relevant fact, or which support an inference raised by such fact, are admissible. LSA-R.S. 15:441. Although the connection of the shirt to the issue of defendant's identification is tenuous, connexity of evidence is a matter of fact for the trier of fact so long as the object is shown to have some relevancy. State v. Watkins, 340 So.2d 235 (La.1976), cert. denied, 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). We find the shirt relevant to corroborate other evidence that defendant was on the school grounds; thus the trial court did not err in *104 finding the shirt or the photograph depicting the shirt admissible.
Defendant also argues the State failed to prove that the shirt admitted into evidence was the same shirt which was seized from the crime scene. Unlike the exhibits previously discussed, the shirt was sufficiently distinguishable to be subject to a visual identification. This assignment of error has no merit.
In assignment of error 26, defendant argues the trial court erred in the admission of a gray shirt found on the school grounds. Defendant argues this evidence is irrelevant. We agree that the court erred in admitting the shirt into evidence because it was never connected with defendant, the victim or the crime. We find, however, that its admission constituted harmless error because no relationship was ever shown and because the shirt itself is not prejudicial; it is a basically innocuous item. La.C.Cr.P. art. 921.
In assignment of error 31, defendant argues the court erred in admitting a photograph into evidence because it was irrelevant. The photograph was of the top landing of the staircase, on which, according to the victim's testimony, the attack occurred. It depicted a pair of blue jeans and a comb. The photograph was admitted to illustrate the crime scene, and its admission was not error.
In assignments of error 10, 11, 12, 13, 14, 15 and 32, defendant argues the trial court erred in admitting evidence of Calvin Watson's actions. The State argues this evidence was relevant to prove identity, a material issue at trial; and, further, that it was admissible as part of the res gestae of the offense.
We have reviewed the assignments of error noted by defendant, and we find that the court did not err in finding these actions constituted the res gestae of the offense, and were admissible. Defendant argues that the arrival of Officer Arnold onto the scene interrupted the chain of events, and those actions which occurred thereafter are not admissible. We disagree. To constitute res gestae, the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. In Louisiana, the res gestae doctrine is broad and includes not only spontaneous utterances and declarations made before or after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after commission of the crime, if the continuous chain of events is evident under the circumstances. State v. Leason, 477 So.2d 771 (La.App. 1st Cir.1985). The interaction of Officer Arnold and Calvin Watson was a continuation of the res gestae and was properly admitted.

LINEUP AND IDENTIFICATION EVIDENCE

(ASSIGNMENTS OF ERROR 3, 8 AND 29)
By assignment of error number three, defendant argues the trial court erred in denying his motion to suppress a physical lineup that was conducted in an unduly suggestive manner. Defendant argues the manner was suggestive because he did not sufficiently resemble the other participants for the victim's identification to be adequately tested, and because the State told the victim where he would stand.
The victim identified defendant from a photographic array in which his was the fifth of six photographs. A physical lineup was then initiated, but defendant refused to take part because other participants who resembled him in age and physical features could not be located. The State then filed a motion to compel a physical lineup, which the court granted. Although the parties had great difficulty in obtaining volunteers for the lineup, five other black males eventually agreed. The victim selected defendant as the perpetrator; he was also identified by Marie Johnson and Mary Dolly.
At the motion to suppress physical lineup, defendant testified that all of the other participants were taller, heavier, or lighter in skin color than he. Defendant also testified that Detective Starkey asked him to switch places with the individual standing *105 in the sixth position, and they were the only participants moved. Several factors must be considered in determining the constitutionality of an out-of-court identification. First, an evaluation must be made of the suggestiveness of the identification procedure. State v. Guillot, 353 So.2d 1005 (La.1977), writ denied, 367 So.2d 864 (La.1979). If a witness' attention is focused on defendant during the lineup, the identification procedure is unduly suggestive. State v. Robinson, 386 So.2d 1374 (La. 1980). In reviewing the procedure, the trial court must look at the totality of the circumstances surrounding the identification. State v. Marchese, 430 So.2d 1303 (La.App. 1st Cir.1983).
A suggestive identification will not result in reversal of a conviction if it is demonstrated that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Factors to be considered in determining the reliability of an identification include the opportunity of the victim to view the perpetrator at the time of the crime, the victim's degree of attention, the accuracy of the victim's prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time elapsed between the crime and the confrontation. State v. Williams, 458 So.2d 1315 (La.App. 1st Cir. 1984), writ denied, 463 So.2d 1317 (La. 1985). Furthermore, a trial judge's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. State v. Bickham, 404 So.2d 929 (La.1981).
At the hearing on the motion to suppress, defendant presented the testimony of Patricia Cumbo, an investigator for the Office of The Public Defender. Ms. Cumbo had been present at the earlier aborted lineup and indicated her dissatisfaction with the parties who consented to appear in the second lineup. She indicated that the ages and sizes of the parties differed markedly from defendant and that she suggested participants be found from juvenile detention or the Louisiana Training Institute. Ms. Cumbo noted that three of the men selected had facial hair (one had a long goatee beard) and another had gold around one of his teeth. Defendant was clean-shaven and did not have gold teeth. Finally, Ms. Cumbo testified that Detective Starkey switched several of the participants. She found nothing in the manner in which the lineup was conducted that was overly suggestive.
Detective Starkey testified that she grouped the participants by putting the men with facial hair together and that she had no particular reason for placing defendant in the fifth position. She stated that she checked with her supervisors about the possibility of finding younger participants, but was not able to obtain clearance because of the problems relating to the use of juveniles in a lineup.
We note initially that the photograph of the physical lineup was not admitted into evidence during trial. A very poor photocopy was admitted at the hearing on the motion to suppress. Defendant acquiesced in the substitution of this photocopy. Therefore, although the defendant complains of the suggestiveness of the physical lineup, this allegation cannot be thoroughly reviewed from the evidence of record.
We find that defendant did not present sufficient testimony at the hearing on the motion to suppress for this court to conclude the lineup was unduly suggestive. The victim identified defendant from a photographic array within hours of the offense and in a physical lineup only two weeks later. The offense occurred outdoors, in daylight, and involved a lengthy encounter between the victim and defendant. Although the encounters of the witnesses, Mary Dolly and Marie Johnson, were fleeting, their identifications were also unequivocal. We find no abuse of discretion in the ruling on the motion to suppress the lineup.
Defendant also asserts the photographic lineup should have been suppressed because the information used as the basis for including defendant's photograph in the array (that is, the testimony of Mary Dolly) was inherently untrustworthy. Although *106 the victim had seen defendant in the neighborhood, she repeatedly stated that she did not know him. Since the victim did not know defendant's name, we cannot find the lineup could be compromised merely because Mary Dolly named him as a suspect.
Defendant further alleges that his right to a jury trial was prejudiced because he was forced to elect a bench trial before a final ruling could be obtained on his motion to suppress the physical lineup. Defendant raises this argument because the State did not introduce the photograph of the physical lineup (the subject of the motion to suppress) into evidence at trial. In essence, defendant argues that he would not have waived a jury trial if he had known the State did not plan to introduce this photograph.
As previously set forth under defendant's assignments of error relative to the denial of a continuance, we find defendant's waiver was a deliberate trial strategy. These assignments of error have no merit.

DENIAL OF OPINION FROM LAY WITNESS

(ASSIGNMENT OF ERROR 40)
Defendant submits the trial court erred by sustaining the State's objection to testimony by a defense witness. Specifically, he argues that it improperly denied him the opportunity to present evidence by Berryman Williams to explain the reason he advised the victim to leave the area.
Initially, we note defendant failed to allege the substance of the testimony Williams would have offered. Thus, the relative importance of this testimony is purely speculative. We presume, however, that Williams' testimony would have concerned the generally unsavory reputation of the deserted schoolgrounds, and not particular incidents of which only he might have been aware, or unsubstantiated gossip.
LSA-R.S. 15:463 provides the general rule that a witness can testify only as to facts within his knowledge and may not testify as to any impression or opinion that he may have. However, it has been determined that where the subject of the testimony is such that any person of experience may make a natural inference from observed facts, a lay witness may testify as to such inferences provided he also states the observed facts. State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985).
While defendant presented foundation testimony to establish Williams' familiarity with the area, he did not establish the observed facts upon which the witness's obvious inference that the grounds were unsafe was based. Therefore, defendant failed to establish the necessary foundation for the admission of the evidence, and the trial court did not err in sustaining the State's objection to its introduction.

CONCLUSION
For all the reasons set forth in this and our earlier opinion (at 484 So.2d 877), we affirm defendant's conviction and sentence.
AFFIRMED.